UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald ROUNDTREE,
Defendant-Appellant.

No. 78–5495.

United States Court of Appeals,
Fifth Circuit.

June 6, 1979.

Paul Pollack, John H. Lipinski, Miami, Fla., for defendant-appellant.

William L. Harper, U.S. Atty., Robert A. Boas, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN, and TJOFLAT, Circuit Judges.

COLEMAN, Circuit Judge.

Donald Roundtree appeals his conviction for unlawful possession with intent to distribute a controlled substance, heroin hydrochloride, in violation of 21 U.S.C. § 841(a)(1). The sole issue raised on appeal is whether the trial court erred in denying Roundtree's motion to suppress.

## I. *Facts*

On the afternoon of January 27, 1978, Drug Enforcement Agent Markonni was engaged in narcotics surveillance at Hartsfield International Airport, watching passengers deplaning from an incoming flight from Los Angeles. Los Angeles is considered by the DEA to be the most significant heroin distribution point in the nation. One of the passengers, Roundtree, was overheard asking for information concerning a flight to Fort Lauderdale which, according to the DEA, is a very large heroin use area.

Roundtree had an unusual limp which drew Agent Markonni's attention. It appeared that Roundtree was attempting to avoid movement of his right leg rather than trying to avoid putting pressure on that leg. Agent Markonni also noticed a very obvious, large bulge on the right inside calf. He was confident that the bulge was not caused by a brace.

Roundtree took a seat in the gate area for the departing Fort Launderdale flight. He looked behind him on both sides and then, through his trousers, adjusted the bulge.

Agent Markonni approached Roundtree and identified himself as a federal narcotics agent. In response to the agent's request for identification, Roundtree produced a Florida driver's license which was made out in his real name. Agent Markonni next asked to see Roundtree's plane ticket. The ticket was issued to "D. Carr". When asked about the discrepancy in names, Roundtree replied that he had obtained the ticket from a friend who worked for the airline and could purchase tickets at a discount. Agent Markonni knew this to be false because the airlines employ a pass system or permit their employees to fly free.

Markonni also observed that Roundtree was not carrying any luggage and that no baggage claim checks were attached to the ticket. A claim check was later found in one of Roundtree's pockets during the search. It is of note that Agent Markonni was suspicious of Roundtree for other reasons which turned out to be groundless. He thought that the appellant's name, Donald Roundtree, was that of a known drug courier. Later on, he was unable to substantiate this vague recollection. The agent also noted in his written report that Roundtree's driver's license appeared to be different from other Florida drivers' licenses. Subsequently, this was determined not to be so.

Roundtree denied possessing drugs, but consented to a search. Upon arriving at a nearby office, Agent Markonni advised Roundtree that he had a right to refuse the search. Roundtree then withdrew his consent. Agent Markonni nonetheless took charge of the "bulge". It turned out to be a large brick, 9 inches by 4 inches by 2½ inches, which tested positive for the presence of an opiate. Roundtree was then arrested.

Upon indictment, Roundtree moved to suppress the evidence seized as a result of the warrantless search. The magistrate recommended that Roundtree's motion be denied, concluding that reasonable suspicion existed at the time of the initial investigatory stop; Agent Markonni's conduct during the course of the stop did not exceed the permissible scope; and probable cause existed at the time of the search and arrest. The District Court adopted the magistrate's recommendation and, accordingly, denied the suppression motion.

Following a bench trial, Roundtree was found guilty as charged in the indictment and sentenced to the attorney general's custody for eight years, to be followed by a five year special mandatory parole term.

## II.

The record amply establishes that Agent Markonni's conduct—during the initial investigatory stop and the subsequent arrest and search of Roundtree—was, when considered independently, well within the bounds of the Fourth Amendment. Actually, the only question is whether the *initial*

investigatory stop [1] was bottomed on the requisite quantum of reasonable suspicion.

██ Roundtree correctly argues that the initial investigative stop, in order to be lawful, must have been based on "specific and articulable facts which, taken together with rational inference from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).[2] *See United States v. Michel,* 5 Cir. 1979, 588 F.2d 986, 997–98, and cases cited therein; *United States v. Wright,* 5 Cir. 1979, 588 F.2d 189, 192; *United States v. Smith,* 6 Cir. 1978, 574 F.2d 882, 886; *United States v. Oates,* 2 Cir. 1977, 560 F.2d 45, 58–59.

Agent Markonni had more than the usual experience in the enforcement of federal drug laws. Roundtree walked with an unusual limp. The limp appeared to be an attempt to conceal the unusual bulge under the leg of his trousers, rather than an effort to compensate for some sort of an injury. Based on his experience, Agent Markonni knew that drug couriers often transport contraband strapped to their bodies. Roundtree's surreptitious conduct—looking over his shoulders and adjusting the "bulge" on his leg without lifting up his trousers—clearly indicated an effort to conceal the protrusion.

We agree that Agent Markonni had sufficient grounds for making the initial investigative stop and for seizing the bulge. *See United States v. Rieves,* 5 Cir. 1978, 584 F.2d 740, 744–45; *United States v. Smith,* 6 Cir. 1978, 574 F.2d 882, 883; *United States v. Oates,* 2 Cir. 1977, 560 F.2d 45, 59–61.[3]

AFFIRMED.

1. The Government concedes that the initial investigatory stop, for purposes of the reasonable suspicion analysis, *infra,* occurred when Agent Markonni first approached Roundtree and asked for identification.

2. The reasonable suspicion required for an investigative stop also has been formulated in terms of whether "a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry v. Ohio, supra,* 392 U.S. at 30, 88 S.Ct. at 1884; *Sibron v. New York,* 392 U.S. 40, 72, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (Harlan, J., concurring in result).

3. In this connection see *United States v. Elmore,* which was argued in tandem with this case at Atlanta on the 12 day of February, 1979, 5 Cir., 595 F.2d 1036.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.