**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Jay ELSOFFER,**
**Defendant-Appellant.**

No. 80–7236.

United States Court of Appeals,
Eleventh Circuit.

April 1, 1982.
Rehearing Denied May 10, 1982.

Bruce E. Pashley, Atlanta, Ga., for defendant-appellant.

Richard W. Hendrix, Julie E. Carnes, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before MORGAN, JOHNSON and HENDERSON, Circuit Judges.

JOHNSON, Circuit Judge:

In this case we consider whether, on the facts at issue, the stop and subsequent search of appellant John Jay Elsoffer by Drug Enforcement Agency (DEA) agents violated Elsoffer's Fourth Amendment rights.

I.

A verdict of guilty having been rendered and there being substantial evidence of guilt, we present the facts in this case in the light most favorable to the government. *See United States v. Glasser*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Two DEA agents while on duty at the Atlanta airport saw appellant Elsoffer exit a flight from West Palm Beach, Florida. Elsoffer was dressed in faded dungarees and had long hair and a full beard. As Elsoffer left the arrival gate, one agent, Terry Mathewson, saw a bulge shaped like a good-sized softbound book on the front of appellant's trousers from waistline to crotch. Mathewson saw the bulge again while observing Elsoffer as the latter walked about the airport concourse. Going to an airline ticket counter, the agent learned that Elsoffer had paid in cash for a one-way ticket from West Palm Beach to New York via Atlanta.

Joined by the other agent, Mathewson walked up to Elsoffer, who was using a vending machine, identified himself and his comrade as police officers, and asked to talk. After studying the agents' credentials, Elsoffer agreed. On request, Elsoffer handed Mathewson his ticket. The agent asked if appellant's name was "Elosser," the name on the ticket. Elsoffer said yes. Retaining the ticket, Mathewson asked for more identification. Elsoffer produced a driver's license with his name correctly spelled. Keeping both the ticket and the driver's license,[1] Mathewson began asking Elsoffer questions about his home and itinerary. Elsoffer stated, somewhat evasively,

---

1. The record does not indicate when Mathewson finally returned the ticket and license to Elsoffer. It does indicate that the agent retained the documents while interrogating Elsoffer and throughout the "initial interview."

that he lived in New York but had spent the past three weeks in Florida visiting a friend. Mathewson thought that the length of the stay was odd because Elsoffer appeared to be carrying little luggage. Elsoffer became extremely nervous, upset, and angry during the conversation. He was sniffling and had a runny nose, possible evidence of a cocaine user. He began questioning the agents' identity but then acknowledged that he knew they were DEA agents although they had identified themselves only as police officers—a fact Mathewson thought curious because few people unfamiliar with the drug trade have heard of the DEA.[2] Mathewson confirmed that the agents worked for the DEA, said they were looking for illegal drugs, and asked whether Elsoffer was carrying drugs on his person or in his luggage. Elsoffer replied that he was not. Mathewson asked for consent to a search. Elsoffer balked but, on being told that the agents sought his voluntary cooperation, consented. After the three had obtained Elsoffer's luggage, an agent then suggested that they go to a nearby lounge. Elsoffer again balked, then agreed.

Elsoffer opened his suitcase in the lounge. As one agent searched the suitcase, noticing that it contained only two or three changes of clothes, the other asked Elsoffer to consent to a patdown search. Elsoffer became upset, shouted that he did not want the search to continue, tried to close the suitcase on an agent's hand, and again questioned the agents' identity. The agents calmed Elsoffer and offered to take him to an Atlanta police office near the airport to prove they actually were police officers. Elsoffer agreed to go to the office, making clear that he would not leave the airport to go down dark alleys. The agents handcuffed Elsoffer at some point while in the lounge.[3]

The agents took Elsoffer to the police office. DEA agent Paul Markonni arrived, was told of the events that had transpired, and asked Elsoffer to accompany him to an inner office. Elsoffer walked into the office, keeping his hands in front of the bulge as he did so. The agents twice asked for, and were twice refused, consent for a search. Markonni twice asked Elsoffer to stand and, on Elsoffer's refusal, ordered him to do so. Elsoffer put his hands in front of the bulge and tried to roll himself into a ball. The two agents forcibly stretched Elsoffer out while Markonni searched him and found that the bulge was caused by a packet containing white powder that proved to be cocaine. Elsoffer was formally arrested.

Elsoffer made a motion to suppress the evidence seized during the search. The magistrate's report suggesting that the motion be denied appears to find that Elsoffer was not seized during the initial stop, that on being handcuffed he was seized in a manner that was tantamount to an arrest, and that the search following the detention was legal because the agents had probable cause to arrest. The district court, adopting the magistrate's report and conclusion, denied the motion. Acting on the basis of the report, the district court, sitting without a jury, convicted Elsoffer of possession of cocaine with intent to distribute.[4] On appeal, this Court remanded, 644 F.2d 357, because of doubts concerning whether the district court had read the transcript of the magistrate's hearing before denying Elsoffer's motion to suppress.[5] The district

---

2. Mathewson, although expressing surprise that Elsoffer knew him to be a DEA agent, had testified earlier that Elsoffer had looked at his badge and credentials and had studied his credentials. Given such apparently close scrutiny of those credentials, which presumably showed that Mathewson worked for the DEA, there seems to be nothing unusual in Elsoffer's knowing that Mathewson was a DEA agent.

3. The agents testified that they had not handcuffed Elsoffer in the lounge. Elsoffer testified that they had. The magistrate credited Elsoffer's testimony.

4. Both parties to this litigation stipulated that the findings of the magistrate's report would serve as the evidentiary basis for the district court decision on Elsoffer's guilt.

5. Elsoffer asserts that due process requires us to remand the case to the trial court again because the court on the initial remand reviewed the record only with regard to the suppression hearing, not with regard to Elsoffer's guilt. We reject this assertion. First, Elsoffer did not raise this objection below. A party failing to object below waives his right to raise an issue on appeal absent plain error. *See*

court on remand stated that it had reviewed the transcript and denied the motion to suppress on the basis of the magistrate's report. Elsoffer's appeal, objecting to the denial of the motion to suppress, again is before this Court.

## II.

The former Fifth Circuit recently has canvassed the legal standards governing airport stops. *United States v. Berry*, 670 F.2d 583 (5th Cir. 1982). This case gives us an opportunity to apply that decision.[6]

As the Court noted in *Berry*, the Supreme Court has articulated three levels of police-citizen encounters: "communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full scale arrests that must be supported by probable cause." At 591. Our first inquiry must therefore be to determine the point in this case at which voluntary communication ended and Elsoffer was seized by the DEA agents.

▮ The Court in *Berry* held that an initial stop of an individual at an airport is not a seizure. It adopted the proposal of Justice Stewart in his plurality opinion in *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), who stated that a seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." However, realizing that the very nature of an airport renders it easy to exert subtle coercion, the former Fifth Circuit noted that courts should scrutinize the

record with care to ensure that the totality of the circumstances shows an utter absence of coercion and hence truly voluntary consent. In particular, the Court noted that retaining an individual's ticket for more than a minimal amount of time might well tip the balance in favor of holding that, in light of the totality of the circumstances surrounding an airport stop, a seizure has occurred. At 597. We believe that that last consideration is applicable in this case. Agent Mathewson retained Elsoffer's ticket while asking for his driver's license, then retained both documents while interrogating him. Given the circumstances surrounding an airport stop, Elsoffer hardly could have felt free to leave while Mathewson retained the ticket—especially since Elsoffer needed the ticket in order to continue his flight to New York. We hold that a seizure occurred when agent Mathewson retained the ticket while asking for further identification. We do not believe, however, that this seizure violated Elsoffer's Fourth Amendment rights, for we conclude that it was based on "specific and articulable facts which, taken together with rational inferences from those facts," constitute reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The bulge of unusual size and shape that Mathewson observed on Elsoffer's body provided a sufficiently specific and articulable basis justifying the seizure. *See United States v. Roundtree*, 596 F.2d 672, 674 (5th Cir. 1979) (bulge on leg that suspect attempted to conceal gave rise to reasonable suspicion).

▮ We focus next on the time at which the detention of Elsoffer expanded beyond the scope of a seizure and became

---

*United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). We see no miscarriage of justice in this case that would justify a finding of plain error. We note that, because the issue raised here concerns only a review of the record in order to determine whether it is sufficient for conviction and not a *de novo* review of the findings of the magistrate, we need not await *Nettles v. Wainwright*, 656 F.2d 986, in which the Eleventh Circuit, sitting en banc, will decide whether a party not objecting to a magistrate's report waives his right to appeal the district court's finding with

respect to the report. Second, the parties stipulated that the record would show that Elsoffer "intentionally and knowingly possess[ed] a substance which laboratory analysis shows to have been 294.5 grams net weight of cocaine hydrochloride." That stipulation, coupled with the inference of intent to distribute from the quantity of a drug an individual has in his possession, *see United States v. Bulman*, 667 F.2d 1374 at 1378 (11th Cir. 1982), would alone be sufficient for Elsoffer's conviction.

**6.** The district court ruled on the motion to suppress before *Berry* appeared in print.

tantamount to an arrest. The former Fifth Circuit stated in *Berry* that it was particularly concerned with ensuring that consent to accompany an agent to an office was voluntary; "only exceptionally clear evidence of consent should overcome a presumption that a person requested to accompany an agent to an office no longer would feel he was free to leave." At 598. The Court also held that requiring an individual to accompany an agent to an office was tantamount to an arrest. Examining the totality of the circumstances at the time he was taken to the lounge—which we believe to be analytically indistinguishable from an office—it is clear that Elsoffer would have felt free neither to refuse consent to a search nor to decline to go to the lounge for the search and that he was therefore effectively arrested on being taken to the lounge. Elsoffer did, after balking, respond affirmatively to agent Mathewson's query as to whether he would prefer to go to the lounge to be searched, but a detention does not escape the strictures of the Fourth Amendment merely because an individual who reasonably felt that he had no alternative to compliance mouthed some pro forma words of consent. We held earlier that Elsoffer had been seized prior to the request to go to the lounge. There is no evidence of any occurrence that might have indicated to Elsoffer that the seizure had terminated and that he was free to do as he pleased.[7] Moreover, even absent an earlier seizure, we would not find that Elsoffer gave free consent. A specific factor that the *Berry* Court mentioned in cataloguing certain occurrences that might cause a court to find that the totality of the circumstances indicated involuntary consent was a statement by a police officer that an individual is suspected of smuggling drugs. Such statements, "which intimate that an

investigation has focused on a specific individual[,] easily could induce a reasonable person to believe that failure to cooperate would lead only to formal detention." At 597. We believe this statement applicable also to a case, as here, in which an agent has stated that he is searching for drugs and directly asks the suspect whether he is carrying drugs. Under the circumstances involved in an airport stop, after such a question Elsoffer, and any other reasonable person, hardly would have felt that he was, if he so desired, free not to go to the lounge.

■ We must, finally, determine whether there existed probable cause to arrest Elsoffer when he was taken to the lounge. If there was probable cause, the subsequent search of his person was legal as a search incident to a lawful arrest. *See, e.g., United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981). If there was no probable cause, the search was illegal and the cocaine found must be suppressed.[8]

■ The standard governing a finding of probable cause is well established. Probable cause exists if " 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1964) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). *See also, e.g., United States v. Preston*, 608 F.2d 626, 632 (5th Cir. 1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980); *United States v. Perkins*, 608 F.2d 1064, 1067 (5th Cir. 1979). The magistrate and the government listed several charac-

---

**7.** We note that our holding would not differ even if the record was clear in showing that the agents had returned Elsoffer's documents before asking him whether he would consent to a search or go to a lounge. We do not believe that after a return of the documents retained during interrogation, followed by requests to consent to a search and go to an office, an individual would feel that his detention had ended.

**8.** Elsoffer contends that the search was unreasonable even if probable cause existed because it was not preceded by formal arrest. We reject his contention. In *Rawlings v. Kentucky*, 448 U.S. 98, 110–11, 100 S.Ct. 2556, 2564 -65, 65 L.Ed.2d 633 (1980), the Supreme Court stated that it was not important that a search preceded formal arrest if probable cause existed absent the result of the search and if formal arrest followed on the heels of the search.

teristics, most of which were entirely innocuous, that they thought would provide probable cause.[9] We need not consider those factors. In this case the unusual size and shape of the bulge and, given its unusual size and shape, its abnormal position on Elsoffer's person alone provided not only reasonable suspicion but also probable cause for Elsoffer's arrest.[10]

We conclude that the district court ruled correctly in denying appellant's motion to suppress the evidence seized during the search of Elsoffer's person. We find the evidence sufficient for his conviction.

The judgment of the district court is AFFIRMED.

---

**9.** The government does not argue that Elsoffer's misidentification of himself gave probable cause as a violation of Georgia Code § 26 2506, which provides that an individual falsely identifying himself to a police officer is guilty of a misdemeanor. *See United States v. Pulvano*, 629 F.2d 1151, 1155 56 (5th Cir. 1981).

**10.** We emphasize the limited nature of our finding. We do not hold that any bulge on a person would give probable cause for an arrest. The crucial consideration here is the odd size and shape of the bulge with respect to its position on appellant's person. Before reaching our conclusion, we examined photographs of the original package.