**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Martin Lewis THOMPSON, a/k/a Guinn
Martin Chitty, Defendant-Appellant.**

**No. 81–6031.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 22, 1983.

William J. Sheppard, Elizabeth A. White, Jacksonville, Fla., for defendant-appellant.

John E. Steele, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and MORGAN, Senior Circuit Judge.

GODBOLD, Chief Judge:

Defendant Martin Thompson was convicted of possession of an unregistered firearm in violation of 26 U.S.C. Sections 5861(d), 5871 (1976). His primary defense was that the evidence of his crime was the fruit of an unlawful detention. A magistrate, after conducting an evidentiary hearing, recommended that the district court grant Thompson's motion to suppress evidence. The district court rejected the magistrate's recommendation and denied the motion. Thompson waived a jury trial and was convicted on the basis of evidence that was the subject of the motion to suppress. We hold that the district court erred in denying the motion to suppress and reverse the conviction.

### I. Background

During his regular patrol of the short term parking lot at the Jacksonville Airport, Arthur Kier, a Jacksonville Port Authority police officer, noticed a black Pontiac Trans Am automobile with its dome light illuminated and a person inside. The vehicle had been parked in the lot for approximately two weeks, but this was the first time Kier had observed someone in it. Kier approached the car because he had an interest in Trans Ams and also he wished to warn the driver to expect a large parking charge. Kier testified that he did not suspect criminal activity.

As Kier approached he noticed that the driver, defendant Thompson, had a light-colored circular object held to his nose. Kier testified that Thompson moved the object down to his lap, screwed the lid on it, and, upon noticing Kier, moved the object quickly to his side. Kier knocked on the window and asked Thompson for identification. According to Kier's testimony, Thompson was free to ignore the request and drive away. Thompson handed Kier his driver's license, which appeared valid.

Kier next asked Thompson for the object he had placed beside him. Kier testified that when this request was made he had observed no violation of the law and neither suspected nor had reason to suspect criminal activity. The government conceded at oral argument that Kier retained Thompson's driver's license while he asked Thompson to produce the object.

Acceding to Kier's request, Thompson handed Kier a small opaque vial containing a powdery white substance. When Kier remarked that the substance could be cocaine, Thompson responded: "Yes, it could." Upon hearing this equivocal response, Kier ordered Thompson out of the car and placed him under arrest. The district court found that approximately two minutes elapsed between the initial contact and arrest.

Kier advised Thompson of his *Miranda* rights, and Thompson indicated his understanding. After Kier informed Thompson that the car would be impounded and searched, Thompson consented to an on-the-spot search of the car. The police searched the car's interior as well as a bag and briefcase found therein. Upon discovering two pistols and parts to a rifle, the police proceeded to search the trunk where they found the semiautomatic rifle that was the basis of Thompson's conviction. All in all, the search uncovered various weapons, ammunition, hashish, and a large sum of cash.

Meanwhile Thompson had been escorted to an office for questioning. There he agreed to a search of his other luggage, which was found to contain another weapon. He also signed forms waiving his *Mi-*

*randa* rights and consenting to the search of his car.

## II. Investigative stop

The crucial issue in this case is whether an investigative stop protected by the Fourth Amendment occurred before Kier asked Thompson to produce the vial.

■ In construing the demands of the Fourth Amendment the Supreme Court has recognized three distinct types of police-citizen encounters. First, not every encounter between law enforcement officers and a citizen constitutes a seizure within the meaning of the Fourth Amendment. *See Dunaway v. New York,* 442 U.S. 200, 212 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979); *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). Some such contact, such as the mere approach and questioning of a willing person in a public place, involves no coercion and detention and hence is outside the domain of the Fourth Amendment. *See Florida v. Royer,* —— U.S. ——, —— —— ——, 103 S.Ct. 1319, 1322–1324, 75 L.Ed.2d 229 (1983) (plurality opinion); —— U.S. at ——, —— —— ——, 103 S.Ct. at 1336, 1336–1338 (Burger, C.J., Rehnquist & O'Connor, JJ., dissenting); *U.S. v. Berry,* 670 F.2d 583, 590–91 (5th Cir.1982) (Unit B) (en banc). Second, ever since *Terry v. Ohio* the Court has recognized a limited class of cases where the police-citizen encounter qualifies as a seizure within the Fourth Amendment but may be justified by less than probable cause. *Terry* -type investigative stops satisfy Fourth Amendment strictures if the officer has an objective, reasonable suspicion of unlawful activity. *See Royer,* —— U.S. at ——, 103 S.Ct. at 1324 (plurality opinion); —— U.S. —— —— —— & n. 3, 103 S.Ct. at 1336–1337 & n. 3 (Burger, C.J., Rehnquist & O'Connor, JJ., dissenting); *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *U.S. v. Brigoni-Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–

2581, 45 L.Ed.2d 607 (1975). Third, some police-citizen encounters, such as a full-scale arrest, must be supported by probable cause. *See Dunaway, supra; Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Berry,* 670 F.2d at 591.

In this case we must decide whether at the time Kier requested the vial the encounter was a voluntary encounter outside the purview of the Fourth Amendment or a protected *Terry*-type stop.

■ Fourth Amendment safeguards come into play where there is a "show of official authority such that 'a reasonable person would have believed he was not free to leave.' " *Royer,* —— U.S. at ——, 103 S.Ct. at 1326 (plurality opinion) (quoting *U.S. v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart & Rehnquist, JJ.)).[1] Applying this test, we conclude that when Kier requested the vial a reasonable person in Thompson's position would have believed that he was not free to leave. The government argues that the mere request for and examination of airline tickets, identification, and the like does not convert a voluntary exchange into a protected *Terry*-type stop. But Kier did more than simply request and examine Thompson's driver's license. The record shows, and the government at oral argument acknowledged, that when Kier made the request he had not returned Thompson's driver's license. Indeed, it is fair to infer that Kier kept Thompson's license throughout the incident. When Kier retained Thompson's license, the encounter matured into an investigative stop protected by the Fourth Amendment. Without his driver's license Thompson was effectively immobilized. A reasonable person in these circumstances would not have believed himself free to leave. If Thompson had tried to drive away he could have been arrested for driving without a license. Fla.Stat.Ann. Sec. 322.15 (West Supp.1983).

---

1. This test was originally devised by Justice Stewart in *U.S. v. Mendenhall* and subsequently adopted by Unit B of the former Fifth Circuit in *Berry,* 670 F.2d at 595. In *Royer* a majority of the Justices indicated their acceptance of Justice Stewart's formulation. —— U.S. at ——, 103 S.Ct. at 1326 (plurality opinion); —— U.S. at ——, 103 S.Ct. at 1332 (Blackmun, J., dissenting).

The case law confirms our common-sense conclusion. In *U.S. v. Elsoffer,* 671 F.2d 1294, 1297 (11th Cir.1982), a case applying Justice Stewart's *Mendenhall* test, the court held that a protected seizure occurred on facts indistinguishable from those here. Law enforcement officers requested and retained defendant's driver's license and airplane ticket, then interrogated him in the airport. In "determin[ing] the point . . . at which voluntary communication ended and [defendant] was seized", the court held:

> Given the circumstances surrounding an airport stop, Elsoffer hardly could have felt free to leave while Mathewson retained the ticket. We hold that a seizure occurred when agent Mathewson retained the ticket while asking for further identification.

671 F.2d at 1297; *see also U.S. v. Elmore,* 595 F.2d 1036, 1041–42 (5th Cir.1979) (seizure occurred when DEA agent carried defendant's airline ticket to airline counter); *U.S. v. Waksal,* 709 F.2d 653 (11th Cir.1983) (seizure occurred when officers failed to return defendant's airline ticket and driver's license); *cf. U.S. v. Robinson,* 690 F.2d 869 (11th Cir.1982) (defendant did not voluntarily consent to search where, inter alia, DEA agent retained his airline ticket); *U.S. v. McClain,* 556 F.2d 253, 255 (5th Cir.1977) (*Miranda* custody existed where individual free to leave only if she abandoned her baggage).

A majority of the Justices in *Royer* also found that a seizure protected by the Fourth Amendment occurred when law enforcement officers retained an airline ticket. In *Royer* law enforcement officers approached a man in an airport whom the officers believed to fit a drug courier profile. The officers, upon request, obtained his driver's license and airline ticket. Retaining both items, the officers asked defendant to accompany them to a small closet-like room where he gave the officers a key to his luggage, permitting a search. In concluding that defendant was seized within the meaning of Fourth Amendment when the officers escorted him to the small room, the plurality relied on the fact that

the officers had retained his ticket and driver's license:

> Asking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for purposes of the Fourth Amendment.

—— U.S. at ——, 103 S.Ct. at 1326 (plurality opinion). Justice Brennan, concurring in the result, stated his view that defendant was seized when the officers simply asked for and received his airline ticket and driver's license:

> For plainly Royer was "seized" for purposes of the Fourth Amendment when the officers asked him to produce his driver's license and airline ticket.

—— U.S. ——, 103 S.Ct. at 1331 (Brennan, J., concurring). For Justice Brennan, then, the retention of documents without which the defendant is unable to depart presents an even stronger case of a protected investigative seizure.

The cases holding that a *Terry*-type stop occurs where law enforcement officers retain a person's airline ticket are controlling. In a purely physical sense, the retention of a person's airline ticket does not prevent him from leaving the company of law enforcement agents. He may, if he has sufficient funds, attempt to purchase another ticket and depart to his chosen destination. Or he may simply try to walk away, abandoning his plans to travel by air. But the cases, exemplified by *Elsoffer* and *Royer,* hold that despite physical possibility of departure, a reasonable person whose airline ticket has been retained would not believe that the officers would permit him to depart.

As in the airline ticket cases, the person whose driver's license has been retained can, in a physical sense, attempt to leave the scene. He can abandon his vehicle and

walk away, or attempt to drive away. As the airline ticket cases hold, however, the legal issue is whether a reasonable person would believe that law enforcement officers would permit him to leave. Contrasted with a person whose airline ticket has been retained, a person in a car whose license has been retained has less reason to expect that he will be permitted to leave. While a person may theoretically purchase another airline ticket and proceed on his way, a driver whose license has been retained may drive away only at the risk of arrest. Thus, the airline ticket cases reinforce, if not compel, our conclusion that a driver whose license has been retained would not reasonably believe himself free to leave.

Consistent with the views of a majority of the Justices in *Royer* and this court's decision in *Elsoffer,* we hold that Thompson had been seized within the meaning of the Fourth Amendment when Kier, while retaining his driver's license, asked to see the vial.

■ We now turn to the validity of the seizure. A *Terry*-type seizure does not require probable cause. The seizure here met constitutional standards if Kier had a reasonable suspicion of criminal activity, based on articulable and specific facts known to him when the seizure occurred. *Berry,* 670 F.2d at 598–99. *See Royer,* —— U.S. at ——, 103 S.Ct. at 1324 (plurality opinion); —— U.S. at ——–—— & n. 3, 103 S.Ct. at 1336–1338 & n. 3 (Burger, C.J., Rehnquist & O'Connor, JJ., dissenting); *U.S. v. Jones,* 619 F.2d 494, 498 (5th Cir.1980).

■ This is an atypical case. Usually the investigating officer testifies to a subjective suspicion of criminal activity and the court then must ask whether his suspicion was objectively justifiable. Kier, however, testified that he did not suspect criminal activity.[2] He was aware of facts that might have aroused suspicion. He saw Thompson make what might be described as a furtive

gesture; he knew that the car had been parked in the lot for an abnormally long period of time; and he knew that Thompson did not own the car. But he testified that he did not become suspicious of criminal activity until he opened the vial.

Although a subjective suspicion of criminality is arguably indispensable in justifying a warrantless search, *see Dipasquale v. State,* 43 Md.App. 574, 406 A.2d 665, 667 (1979); 1 LaFave, Search and Seizure Sec. 3.2(b) (1978 & Supp.1983), we do not decide whether an actual suspicion is required. Applying an objective test, we conclude that the facts of which Kier was aware when he retained Thompson's driver's license were insufficient to support a reasonable suspicion of criminal activity. The search of the vial was therefore unlawful.

### III. Seizure and search of the vial

■ The district court, applying the principles enunciated in *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) (totality of the circumstances determines the voluntariness of consent to waive Fourth Amendment rights), held that Thompson voluntarily consented to the seizure and search of the vial. Because Thompson was illegally detained when he gave his consent, however, the district court's conclusion that Thompson's consent was voluntary is insufficient to validate the seizure and search. Thompson's consent must also be untainted by the illegal detention. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Berry,* 670 F.2d at 604–05.

■ Absent findings by the district court, this court may itself decide the taintedness issue. *Berry.* The Supreme Court has identified three factors useful in determining whether a defendant's consent was tainted by an illegal detention: (1) the temporal proximity of the illegal detention and the consent; (2) the presence of intervening circumstances; and (3) the purpose and fla-

---

**2.** Kier also testified that prior to opening the vial he had no reason to suspect criminal activity. The officer's conclusion on the legal issue at stake, that is, whether facts known to him legally justify the search, is not determinative.

*U.S. v. Gray,* 659 F.2d 1296, 1300–01 & n. 8 (5th Cir.1981) (Unit B). *See generally* 1 LaFave, Search and Seizure Sec. 3.2(b) (1978 & Supp.1983).

grancy of the official misconduct. *Taylor v. Alabama,* 457 U.S. at 698, 102 S.Ct. at 2671, 73 L.Ed.2d at 324; *Robinson,* 690 F.2d at 877. Applying these three factors, we hold that Thompson's consent was tainted by the illegal detention.

First, Thompson's consent was given immediately after Kier retained his driver's license. Second, there were no intervening circumstances between the detention and the consent. Third, although the government's conduct cannot be justifiably described as flagrant, Kier admitted that prior to the search of the vial he neither suspected nor had reason to suspect criminal activity. *Cf. Berry,* 670 F.2d at 605 (defendant's consent was not tainted because, inter alia, officer had an arguable basis for the illegal detention.

Because Thompson's consent was tainted, the contents of the vial and Thompson's statements relating to it must be excluded as the fruit of an unconstitutional detention.

### IV. Automobile search

The district court upheld the search of the automobile on three separate grounds: search incident to a lawful arrest, the automobile exception, and consent. We hold that none of these theories justifies the search.

#### A. Search incident to a lawful arrest

■ The district court held that the search of the passenger compartment and the bag and briefcase found therein constituted a search incident to a valid arrest. Because Kier did not have probable cause to arrest Thompson the district court's holding cannot stand.

The contents of the vial and Thompson's statements about them were the fruit of an illegal detention and must therefore be ignored in determining whether Kier had probable cause to arrest. Absent this information Kier did not have probable cause to arrest and the arrest was invalid.

**3.** We need not address the legitimacy of the search of Thompson's luggage. The luggage

#### B. Automobile exception

[11] The district court upheld the search of the vehicle's trunk under the automobile exception to the warrant requirement. In *U.S. v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that, if supported by probable cause, a warrantless search of an automobile and its contents does not violate the Fourth Amendment. *Ross* does not justify the search here. For reasons developed above the contents of the vial and the incriminating evidence obtained from the search of the passenger compartment must be excluded. Without this evidence Kier lacked the probable cause required by *Ross.*

#### C. Consent

■ In the alternative, the district court held that Thompson voluntarily consented to the search of the automobile. Even assuming Thompson's consent was voluntary, his consent validates the search only if it was untainted by the illegal investigative stop. *Taylor.* In light of the three factors identified in *Taylor,* we hold that Thompson's consent was the product of the unlawful detention.

First, there was no significant lapse of time between the unlawful detention and the consent. *Cf. Taylor,* 457 U.S. at 691, 103 S.Ct. at 2668, 73 L.Ed.2d at 320 (holding confession tainted despite six-hour period between illegal arrest and confession). Second, no intervening circumstances dissipated the effect of the unlawful detention. Nothing in the record indicates that Kier advised Thompson of his right to refuse consent. Indeed, Kier's statement that the vehicle would be impounded and searched suggested the futility of refusing consent. Although Kier read Thompson the *Miranda* warnings, "[t]he Supreme Court has squarely held that *Miranda* warnings by themselves are not sufficient to attenuate the taint of an unconstitutional arrest." *Robinson,* 690 F.2d at 878. Third, Kier's conduct was not flagrant, but, in contrast to *Berry,* he had no arguable basis for the illegal detention.[3]

did not contain the weapon that was the basis of Thompson's conviction. Because the lug-

All evidence obtained from the search of the automobile, including the semiautomatic rifle that was the basis of Thompson's conviction, must therefore be excluded as the fruit of an illegal detention.

### V. Conclusion

Thompson was seized in violation of the Constitution when Kier, without a reasonable suspicion of unlawful activity, retained Thompson's driver's license. The incriminating evidence subsequently obtained must be excluded as the fruit of an unlawful detention.

REVERSED.

gage search occurred after the automobile search, the police could not have used the weapon found in the luggage as grounds for searching the automobile where the weapon was found.