**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Timothy ARMSTRONG,**
**Defendant-Appellant.**

No. 81–7987.

United States Court of Appeals,
Eleventh Circuit.

Jan. 9, 1984.

Roger B. Colton, Foley & Colton, Douglas N. Duncan, West Palm Beach, Fla., for defendant-appellant.

Richard W. Hendrix, Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and FAY, Circuit Judges, and WISDOM *, Senior Circuit Judge.

FAY, Circuit Judge:

Appellant, John Armstrong, was convicted after a jury trial in the district court for the Northern District of Georgia of knowingly and unlawfully possessing with intent to distribute two Schedule II control substances—cocaine and methaqualone—in violation of 21 U.S.C. § 841(a)(1) (1980). In this appeal, Mr. Armstrong challenges the district court's denial of his motion to suppress the cocaine and methaqualone discovered during a search of his luggage which was allegedly conducted in violation of his fourth amendment rights. We find that appellant's fourth amendment rights were not violated since the initial encounter between the agent and the appellant at the Palm Beach International Airport was merely a contact, not within the purview of the fourth amendment. The seizure of the luggage at the Atlanta airport was lawful since it was supported by probable cause. We, therefore, hold that the trial court properly denied the motion to suppress and we affirm appellant's conviction.

I. FACTS

*West Palm Beach Encounter*

On January 9, 1981, Detective Kent Glover of the Palm Beach Sheriff's Department observed Michael Jennings enter the Palm Beach International Airport carrying two suitcases. He appeared very nervous as he approached the Delta ticket counter and soon was joined by appellant, John

Armstrong. The appellant, who also appeared very nervous, produced a large amount of cash with which Mr. Jennings then purchased two tickets to Charleston, South Carolina, via Atlanta. They checked both items of luggage and started to walk toward the concourse area, no longer appearing nervous.

Detective Glover decided to stop the appellant and Mr. Jennings and ask them a few questions. Upon stopping them, Detective Glover identified himself as a Deputy Sheriff, and asked them if they would talk to him. Both indicated that they would and Detective Glover then requested their airplane tickets, and some form of picture identification. Both the tickets and the identifications were in their respective names.

Detective Glover requested consent to search the luggage, which had been checked previously with Delta Airlines, but both men refused to consent to the search. The appellant then asked Detective Glover if he could call his father, whom he identified as a police lieutenant. Detective Glover assented and told both men that they were not in custody and could go wherever they wished. After making his call to his father, the appellant again refused to consent to a search of the luggage and the interview was terminated. Both men left to board their flight. Detective Glover then telephoned Special Agent Paul J. Markonni of the Drug Enforcement Administration in Atlanta, to whom he recounted all the details of the encounter with Mr. Armstrong and Mr. Jennings, including the fact that they had refused to consent to a search of their luggage.

*Atlanta Encounter*

At approximately 8:20 p.m. that same day Special Agent Markonni and Special Agent Terry L. Mathewson met the arrival at the Atlanta Airport of Delta's flight from West Palm Beach and observed appel-

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designa- tion.

lant and Mr. Jennings deplane. Both passengers, appearing very nervous, approached a Delta gate agent and asked for directions to the departure gate of their connecting flight to Charleston.

The agents then observed both appellant and Mr. Jennings enter a restroom. When they exited several minutes later, appellant went to a public telephone located in a "bank" of open telephones, while Mr. Jennings stood in the concourse outside the telephone area and looked all around. Mr. Jennings then went to the telephone next to appellant and appeared to be making a call. Agent Markonni approached the telephone "bank" area, stood at a telephone on the opposite side of both men and pretended to make a phone call. While there, he overheard appellant making the following statements:

> They don't have enough for a search warrant.
>
> They don't have enough for a search warrant, or they wouldn't have let us go. He said they'd have a dog waiting in Charleston to smell our luggage.
>
> I wasn't acting suspicious—they just picked us out.
>
> We get into Charleston after 10:00 p.m. If I don't call by 11:00 p.m. or 11:30 p.m., get up to Charleston because I'll be in trouble.

Agent Markonni left the telephone area when appellant completed his call and rejoined Agent Mathewson in the concourse area. The DEA agents approached both men; identified themselves to them and asked them if they could speak to them for a few minutes. Both consented to talk to the agents and produced their tickets, baggage claim checks, and driver's licenses upon request. Both men, appearing very nervous, once more refused to permit a search of their luggage.

Appellant then indicated that he was waiting for a call from his lawyer and asked if he could go and phone his lawyer. Both agents advised them that they were not being detained and could do whatever they wished. After apparently conferring with appellant's attorney by telephone, both men returned and again refused to permit searches of their luggage. Agent Markonni informed them that they were both free to leave but that he would be retaining their luggage in Atlanta.

After obtaining the luggage from the baggage claim area, Agent Markonni requested a criminal record check of both men from the West Palm Beach Sheriff's Department. Detective Glover phoned Agent Markonni and informed him that appellant had been arrested previously by West Palm Beach police for two drug offenses and for a weapons offense. He further noted that appellant had been convicted of the weapons offense and placed on probation on the drug charges. Agent Markonni used all of the facts that he had compiled to obtain a search warrant from the magistrate for the two suitcases. Among the clothing in the luggage Agent Markonni discovered quantities of cocaine and methaqualone.

Appellant presents two arguments on appeal. First, he argues that the encounter with Detective Glover at the West Palm Beach airport was a seizure of his person which could be justified only by "reasonable suspicion" of criminal activity, which the officer lacked. Since the West Palm Beach encounter led the DEA agents to stop him in Atlanta, the cocaine and methaqualone obtained as a result of this encounter should be suppressed as fruits of an unlawful seizure. Second, he argues that the detention of his luggage at the Atlanta airport without probable cause also violated his fourth amendment rights.

## II. INVESTIGATIVE STOP

In order to determine whether appellant's fourth amendment rights were violated at the initial confrontation in the West Palm Beach airport, we must determine if the encounter between Detective Glover and the appellant was the type of police-citizen encounter which would invoke the fourth amendment safeguards. In a recent en banc case, *United States v. Berry*, 670 F.2d 583 (5th Cir.1982) (Unit B),[1] this

---

1. Although appellant argued that *Berry* should not be applied retroactively, this circuit has

court set definitive guidelines for applying the fourth amendment requirements to airport stops and searches of criminal suspects by law enforcement officials. The court concluded that there are three distinct tiers of police-citizen encounters, each triggering a different analysis of the balance which should be struck between the government's need to search and the invasion of privacy interests which such a search entails.

The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but rather the voluntary cooperation of the citizen is elicited through non-coercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of fourth amendment protection. *Id.* at 591. The second category, the investigative stop, is limited to brief, non-intrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a "seizure" sufficient to invoke fourth amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. *Id.* The third type of police-citizen encounters, arrests, are characterized by highly intrusive or lengthy search or detention. The fourth amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime. *Id.* The essence of appellant's position is that his detention fell into the second category, a seizure, which requires reasonable suspicion.

The test for determining whether a seizure has occurred in an airport surveillance case was formulated by Justice Stewart in his concurrence in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) and adopted by this court in *Berry.*[2] Justice Stewart concluded that a person is "seized" within the meaning of the fourth amendment only if, in view of all

the circumstances, a reasonable person would have concluded that he was not free to leave. *Id.* at 554, 100 S.Ct. at 1877. As long as a person remains at liberty to disregard a police officer's request for information, no constitutional interest is implicated.

Justice Stewart gave substance to this definition by citing examples of the circumstances that establish a seizure. Some of these examples would be ". . . the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554, 100 S.Ct. at 1877. Applying Justice Stewart's test and examples used to the facts now before us, we conclude, without question, that the encounter between Agent Glover and Mr. Armstrong at the West Palm Beach airport was merely a contact, outside the realm of fourth amendment protection.

The encounter took place in the public concourse. Detective Glover was not wearing a uniform nor displaying a weapon. There was no physical contact and the only display of authority occurred when the detective approached Mr. Armstrong and identified himself as a deputy sheriff. He requested, but did not demand to see, the appellant's identification and ticket. He notified appellant that he was free to leave and that he did not have to consent to the search. Nothing in this record suggests that the appellant had any objective reason to believe that he was not free to end the conversation in the concourse and proceed on his way. We thus conclude that the detective's initial approach involved no restraint of appellant's liberty, but rather that it fell into the first *Berry* category of a non-coercive police-citizen encounter. This type of contact does not rise to the level of a seizure and thus is outside the realm of fourth amendment protection.

now decided in *United States v. Robinson,* 690 F.2d 869, 873 (11th Cir.1982), that the fourth amendment aspects of *Berry* are fully retroactive.

2. *United States v. Berry,* 670 F.2d at 595.

Consistently this court has noted that we will zealously guard the rights of citizens freely to give or to withhold consent to talk with or be searched by police. *See, e.g., United States v. Berry,* 670 F.2d at 596. We have always carefully scrutinized whether the circumstances of a particular case reveal the presence of any coercion. Some of the circumstances which we have identified as indicating coercion by law enforcement personnel have been: blocking an individual's path or otherwise intercepting him to prevent his progress, *United States v. Bowles,* 625 F.2d 526 (5th Cir. 1980); retaining an individual's ticket for more than a minimal amount of time, such as by taking the ticket over to a ticket counter, *U.S. v. Elmore,* 595 F.2d 1036 (5th Cir.1979), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980); statements by officers that individuals are suspected of smuggling drugs, *United States v. Robinson,* 625 F.2d 1211 (5th Cir.1980) (Unit B); and statements which would indicate to the individual that an innocent person would cooperate with police, *United States v. Setzer,* 654 F.2d 354 (5th Cir.1981) *cert. denied,* —— U.S. ——, 103 S.Ct. 457, 74 L.Ed.2d 609 (1983). None of these circumstances is present in this case. Appellant's fourth amendment rights were not violated.[3]

 Appellant asserts that the facts in this case are identical to the facts in *United States v. Elsoffer,* 671 F.2d 1294 (11th Cir. 1982) and that therefore, based on *Elsoffer,* we must find a violation of appellant's fourth amendment rights. In *Elsoffer* this court found that, when viewing the totality of the circumstances before the court, the retention of a suspect's ticket and driver's license, while continuing to interrogate him, amounted to a seizure which could only be

lawful if supported by reasonable suspicion. *Id.* at 1297. This case is clearly different than *Elsoffer* since nothing in this case indicates that Detective Glover did not return the items to Mr. Armstrong after only a minimal amount of time had elapsed. The evidence shows that Detective Glover had both pieces of identification but Mr. Armstrong then asked Detective Glover if he could go and call his father, whom he identified as a police lieutenant. Appellant, who bears the burden of establishing the facts needed for a suppression of evidence, has not asserted any facts to show that Detective Glover kept both pieces of identification while continuing to interrogate him. In fact, the record indicates quite the opposite. Detective Glover stressed to both men that they were free to leave and in fact, they did so.[4] *Elsoffer* is clearly distinguishable from the facts of this case.

### Detention of Luggage

Appellant's second contention is that the appropriate standard under the fourth amendment for temporary detention of luggage which has been checked in with the airlines, while the owner is allowed to continue his travels, is probable cause. The district court found, and the government asserts on appeal, that the luggage was properly detained because the agents had reasonable suspicion to believe that it contained contraband. Neither this court nor the former Fifth Circuit has previously confronted this issue; however, several other circuits have held that authorities may temporarily seize and detain an airport traveller's luggage based on reasonable suspicion. *See, e.g., United States v. Corbitt,* 675 F.2d 626 (4th Cir.1982) (reasonable suspicion necessary for detention of luggage to allow

---

**3.** Even if we had found that the encounter at the West Palm Beach airport constituted a seizure not supported by reasonable suspicion, the subsequent search of appellant's luggage in Atlanta was not tainted. There is ample evidence in this record which indicates that Mr. Armstrong's seizure was terminated and that he was free to do as he pleased. Both men calmly boarded their flight to Atlanta. Once Agent Markonni overheard appellant's conversation at the public phone in the Atlanta air-

port, probable cause existed to obtain a warrant and search the luggage.

**4.** Appellant's final issue on appeal is that the warrant to search his luggage was not supported by probable cause. We disagree and hold that Agent Markonni's affidavit did establish the probable cause needed for the issuance of the search warrant by the magistrate.

further investigation); *United States v. West,* 651 F.2d 71 (1st Cir.1981) *vacated,* —— U.S. ——, 103 S.Ct. 3528, 77 L.Ed.2d 1382 (1983) (reasonable suspicion sufficient for police to detain temporarily an airport traveller's luggage for exposure to a detector dog); *United States v. Martell,* 654 F.2d 1356 (9th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 3551, 77 L.Ed.2d 1397 (1983) (reasonable suspicion needed for brief detention of luggage to await arrival of police detector dog); *United States v. Klein,* 626 F.2d 22 (7th Cir.1980) (reasonable suspicion needed to detain luggage while waiting for detector dog).

Last term, in *United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court addressed the issue of whether the fourth amendment prohibits law enforcement authorities from temporarily detaining personal luggage for exposure to a trained narcotics detection dog on the basis of reasonable suspicion that the luggage contains narcotics. Specifically, the Court applied the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to the detention of personal property and concluded that if an officer's observations lead him reasonably to believe that a traveler is carrying luggage which contains narcotics, the principles of *Terry* would permit the officer to detain the luggage briefly to investigate the circumstances that initially aroused his suspicion, provided that the detention is properly limited in scope. *United States v. Place,* —— U.S. at ——, 103 S.Ct. at 2644.

Although the Court found that a brief, unintrusive detention of a person's luggage is legal based only on reasonable suspicion, they further stated that a protracted detention of luggage would exceed the limits of the investigative stop permitted by *Terry* and thus would require a finding of probable cause. It is not necessary, though, for us to decide today at what point the detention of luggage at an airport goes beyond a

mere investigative stop and becomes instead an intrusion into a traveler's fourth amendment rights because in this case Agent Markonni had probable cause to detain appellant's luggage.

▮ Probable cause to search exists where the facts warrant a reasonably cautious person to believe that the "search will uncover evidence of a crime." *United States v. Rojas,* 671 F.2d 159, 165 (5th Cir. 1982) (Unit B). Appellant and Mr. Jennings were observed by both agents nervously walking around the Atlanta airport. Agent Markonni overheard appellant's conversation at a public phone in which he stated: "They don't have enough for a search warrant . . . or they wouldn't have let us go. He said they'd have a dog waiting in Charleston to smell our luggage. If we don't call by 11:00 p.m. or 11:30 p.m., get to Charleston because I'll be in trouble." There is no doubt in this case that appellant's statements indicated to the agents the probability that the baggage contained contraband. Mr. Armstrong himself provided the information needed by Agent Markonni to establish probable cause.

In our view, since appellant's flight was imminent, and the agents had probable cause to believe that the luggage contained contraband, the inconvenience to Mr. Armstrong of waiting for his bag to be forwarded on the next flight to Charleston must yield to the practical necessities of law enforcement agents engaged in the difficult job of controlling drug traffic through airports. Agent Markonni restricted his intrusion into appellant's luggage by obtaining a judicial determination of probable cause from a neutral and detached magistrate before searching the baggage. Under the facts of this case none of the appellant's rights were violated and the motion to suppress was properly denied.[5]

AFFIRMED.

---

5. This court, in *United States v. Waksal,* 709 F.2d 653 (11th Cir.1983), applied *Elsoffer* to another airport stop case. In its analysis of the stop, the court stressed that one of the factors for the court to consider, when trying to identi-

fy whether a stop amounts to a seizure, is whether the police told the suspect that he was free to leave and not consent to the search. *Id.* at 661. That is precisely what Detective Glover did in this case.