UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Valentine TOMASZEWSKI,
Defendant–Appellant.

No. 86–8831
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 16, 1987.

As Amended on Denial of Rehearing and
Rehearing En Banc Feb. 9, 1988.

---

Before TJOFLAT, CLARK and EDMONDSON, Circuit Judges.

PER CURIAM:

Thomas Valentine Tomaszewski appeals his conviction for possession of cocaine with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1982). Tomaszewski contends that the cocaine used to convict him was illegally seized while he was waiting for a flight at the Atlanta airport. For the reasons set forth below, we affirm his conviction.

On May 12, 1986, Tomaszewski flew from West Palm Beach, Florida to Atlanta. Record, Vol. 2 at 52. Intending to proceed to Detroit, he approached an agent of Delta Airlines and asked for the appropriate gate.[1] Detective W.A. Selph, a member of a drug task force monitoring the airport, was standing next to the Delta agent. *Id.* at 3–4.

Detective Selph testified that Tomaszewski's charcoal gray suit and maroon tie made him suspect Tomaszewski as a "player." Acting on this hunch as well as the fact that Tomaszewski had arrived from West Palm Beach, allegedly a source city for cocaine, Selph walked to the gate from which the Detroit flight was leaving. Propping himself against the counter so that he might see any travel information displayed when Tomaszewski received his boarding pass, Selph observed Tomaszewski walk into the gate area. *Id.* at 4–7. Tomaszewski made eye contact with the detective, looked at the flight information behind the counter, and walked to the center of the concourse where the flight monitors were located. *Id.* at 8, 49, 55.

Jay R. Moskowitz, Sands & Moskowitz, P.A., Coconut Grove, Fla., for defendant-appellant.

Robert L. Barr, Jr., U.S. Atty., Mary Jane Stewart, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

1. Tomaszewski denies ever having spoken to the Delta agent, but we are bound on appeal to accept the facts as the district court found them unless they are clearly erroneous. *United States v. United States Gypsum Co.*, 333 U.S. 364, 394, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

Detective Selph, joined by this time by an Investigator Noe, also of the task force, followed him. As Tomaszewski stood in front of the monitors, Selph testified, he periodically looked over at them, and the officers noticed a bulge in Tomaszewski's pants beneath his belt. *Id.* at 9. Because his jacket was unbuttoned, the officers were able to observe that the bulge did not move with the rest of his body. Selph estimated that the bulge protruded about one inch and was five to six inches wide, in a pie shape. *Id.* at 9–10.

The two officers approached Tomaszewski, identified themselves and showed their credentials. Selph asked for Tomaszewski's ticket and driver's license. After reviewing these items for about fifteen seconds each, he returned them. *Id.* at 11–13. According to Selph, Tomaszewski became very nervous during this interview, perspiring and pulling on his jacket as if to cover the bulge. *Id.* at 12.

At this point, the detective asked Tomaszewski if he would consent to a search of his luggage and person. *Id.* at 14, 49. Tomaszewski agreed, and after informing him of his rights not to consent and to an attorney, Selph searched Tomaszewski's carry-on bag. When nothing was found there, Selph asked again if he could search Tomaszewski's person. *Id.* at 14, 16–17. This time Tomaszewski refused, and Selph asked him why, "if you don't have anything to hide." *Id.* at 17. Investigator Noe told Tomaszewski it was apparent that he was concealing something in his pants. Tomaszewski responded that he was wearing a brace and asked to call his attorney. *Id.* at 17–18. As he walked to the pay phones,

Selph walked behind him and saw nothing to indicate a brace. *Id.* at 18–19.

After speaking with his attorney twice, Tomaszewski again refused consent. Detective Selph asked him to remove the package, but Tomaszewski balked, saying his attorney had said to let the officers remove it. *Id.* at 24. Selph took Tomaszewski to a nearby room, removed the package, and discovered it was an oval piece of cardboard with several bags of cocaine taped to it. *Id.*

Tomaszewski was charged in a one-count indictment of possessing cocaine with intent to distribute it. After entering a plea of not guilty, he filed a motion to suppress the cocaine. An evidentiary hearing was held, the magistrate denied the motion, and Tomaszewski objected. The district court held a hearing on the matter, affirmed the magistrate's findings and conclusion, and accepted Tomaszewski's conditional plea of guilty.

■ Tomaszewski argues in this court, as he has below, that the police officers were without probable cause to arrest him and thus the cocaine seized was not the product of a valid search incident to arrest. The appearance of a bulge, he insists, is not an objectively verifiable fact, and therefore an officer's testimony about it cannot be used to establish probable cause. Because the government does not dispute that probable cause was necessary,[2] but asserts only that Detective Selph's testimony was adequate to establish it, we proceed immediately to that question.

---

**2.** In *United States v. Berry,* 670 F.2d 583 (5th Cir. Unit B 1982) (en banc), the court outlined the three tiers of "police-citizen encounters." If a policeman stops a citizen briefly and the interaction following can be described as completely "non-coercive," the encounter will be considered outside of the Fourth Amendment's ambit. *Id.* at 594. If a stop is such that a reasonable person would not feel free to leave, then the encounter will be considered at least a seizure, and cause for reasonable suspicion prior to the seizure will be required to validate what happens thereafter. *Id.* at 595. Finally, if a detention is for more than a brief period, involves moving the person detained somewhere else, or subjects the person to increased implicit police pressure, it may be considered tantamount to an arrest and thus require probable cause. *Id.* at 602. The government and Tomaszewski agree here that by the time the cocaine was seized, the equivalent of a full-scale arrest had taken place and therefore probable cause was necessary.

As a legal and logical matter, we find Tomaszewski's contention meritless. Probable cause exists where facts and circumstances within the arresting officer's knowledge are " 'sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). Neither this court nor any other, so far as we are aware, has required that probable cause be based on something an officer "can come into court and produce" or "objectively demonstrate to exist ... at a later date." Appellant's Brief at 19. To be sure, tangible, or what Tomaszewski calls "objective," proof may be accorded greater weight than observations, impressions, and the like, but such proof is not a threshold requirement for probable cause. Indeed, carrying Tomaszewski's argument to its logical extreme, a police officer could observe a driver bouncing from curb to curb and ignoring all traffic signs, smell liquor on his breath, and note that his eyes were glassy—observations that are all incapable of proof after the fact—and still be found without probable cause to arrest him and administer a blood test. Yet we know from *Schmerber v. California*, 384 U.S. 757, 768–69, 86 S.Ct. 1826, 1834–35, 16 L.Ed.2d 908 (1966) (probable cause for blood test found based on "symptoms of drunkenness"), that this is not the law.

Tomaszewski maintains that *United States v. Thompson*, 712 F.2d 1356 (11th Cir.1983), with its requirement that suspicion be "objectively justifiable," supports his position, but he appears to have misread that case and its use of the term "objective." The police officer in *Thompson* had admitted that despite several possible reasons for doing so, he had not suspected criminal activity before he searched a vial in the defendant's possession. In determining whether there was probable cause, the court noted that it was faced with the ordinary question in reverse: "This is an atypical case. Usually the investigating officer testifies to a *subjective* suspicion of criminal activity and the court then must ask whether his suspicion was *objectively* justifiable." *Id.* at 1361 (emphasis added). As the context indicates, the court was using the term "objective" to embody the reasonable-man standard of probable cause and not to establish a requirement of verifiable proof; "subjective" and "objective" modify the ultimate conclusion, not the proof leading up to that conclusion.

■ We find that there was probable cause to arrest Tomaszewski and recover the cocaine he was carrying. From the first time he spotted Detective Selph, Tomaszewski appeared to be both watching and avoiding him. The officers noticed a bulge in Tomaszewski's clothing that appeared not to be caused by his body. In response to the officers' questions, Tomaszewski began to perspire and pull his jacket together in front of the bulge. In *United States v. Elsoffer*, 671 F.2d 1294 (11th Cir.1982), the court reviewed facts and circumstances virtually identical to these and determined that there was probable cause for the detention preceding the search. *Id.* at 1299; *see United States v. Lehmann*, 798 F.2d 692, 694 (4th Cir.1986) (probable cause found where defendant had bulge below the belt and attempted to conceal it with his jacket); *see also United States v. Roundtree*, 596 F.2d 672, 674 (5th Cir.) (reasonable suspicion established where defendant had bulge on inside of his calf which he was seen "adjusting"), *cert. denied*, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 96 (1979).

■ It is unfortunate, given *Elsoffer*'s emphasis on the "unusual size and shape" of the bulge there, 671 F.2d at 1299, that the cocaine was not presented at the sup-

pression hearing so that the magistrate could judge the likelihood that an unusual bulge was visible. As the factfinder, however, the magistrate was entitled to weigh the credibility of the witnesses, and it is clear that he believed Detective Selph's testimony that the package Tomaszewski carried was about one inch deep and five to six inches across and included a piece of cardboard. From this he could infer that a substantial bulge would have been visible.[3]

Finding that there was probable cause to arrest Tomaszewski and that the cocaine was seized in a valid search incident to arrest, we affirm his conviction.

AFFIRMED.

---

**3.** Tomaszewski emphasizes that the *Elsoffer* court had a photograph of the cocaine to aid it in judging the arresting officer's credibility. 671 F.2d at 1299 n. 10. Although a photograph would have been preferable to Selph's testimony alone, we decline for much the same reasons stated earlier to hold that photographs are required.