754 So.2d 717 (1998)
O.A., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2047.
District Court of Appeal of Florida, Fourth District.
December 9, 1998.
*718 Richard L. Jorandby, Public Defender, and Susan D. Cline, Assistant Public Defender, West Palm Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Sarah B. Mayer, Assistant Attorney General, West Palm Beach, for Appellee.
FARMER, J.
In affirming this conviction, we write only to respond to the dissenting opinion.
As police were investigating a traffic matter in the early morning hours, with their police cars parked partially on the swale, a 16-year old boy approached the scene on the sidewalk with a friend. One of the police asked the boy for identification and to explain what he was doing out at that hour. Disclaiming any identification, he did give the officer his name. The officer immediately radioed it to check for warrants. After the officer received a response he inquired as to what the boy was carrying in his backpack, and the boy offered it to the officer to look inside. There the officer found what he thought were burglary tools, along with a loaded firearm.
The boy was arrested for possession of contraband. In time, a trial judge considered his motion to suppress. After hearing testimony from the participants, the judge explained his findings thus:
"I find that this officer stated to this young man: `how are you doing?;' `where are you headed?;' `what are you doing?;' that at no time was his path blocked by the officer. The officer was standing 6 to 8 feet away. The only time at which these officers encircled this young man is after the gun was found in his bag. Until that time, they kept an appropriate distance from him, so he was not being detained by them physically. I find that he initiated the handing over of the backpack after he was asked what was in it, and before looking in it the officer confirmed: `are you sure that I can look in the bag?'"
The court denied the motion to suppress. Following the conviction defendant appeals that denial. We necessarily affirm, for the record contains ample evidence to support his determination.
The basis for the dissent is that, as a matter of law, no reasonable person would feel free to end this kind of consensual encounter during the period after the `officer radioed the name for a computer check and while the parties awaited a response. The dissent then likens this circumstance to relinquishing a drivers license to an officer which, it is argued, constrains the citizen from feeling free to leave, citing United States v. Thompson, 712 F.2d 1356 (11th Cir.1983), and Lightbourne v. State, 438 So.2d 380 (Fla.1983). While recognizing that holding a drivers license "is more coercive than what happened in the present case," the dissent candidly admits the absence of cases identical to this in which the evidence was suppressed. We are not surprised that the dissent has found no cases to support a holding that the present facts are so coercive that they overcome the freedom to end the encounter. Simply stated, the law is to the contrary.
In Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), a passenger on a Greyhound bus was approached *719 by officers during a stopover in Fort Lauderdale en route to Atlanta. The officers, who were identifiable by badge, insignia and visible weapon, walked down the aisle of the bus andwithout any articulable reason for doing sostopped at defendant's seat. They asked to see his ticket and some identification. Explaining that they were narcotics officers, they asked for permission to search his luggage. After he consented they found drugs and arrested him. In reviewing the Supreme Court of Florida's holding that the officers had seized the defendant because no reasonable person would have felt free to terminate the encounter, the United States Supreme Court stated the argument in favor of suppression thus:
"Bostick insists that this case is different because it took place in the cramped confines of a bus. A police encounter is much more intimidating in this setting, he argues, because police tower over a seated passenger and there is little room to move around. Bostick claims to find support in language from Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), and other cases, indicating that a seizure occurs when a reasonable person would believe that he or she is not `free to leave.' Bostick maintains that a reasonable bus passenger would not have felt free to leave under the circumstances of this case because there is nowhere to go on a bus. Also, the bus was about to depart. Had Bostick disembarked, he would have risked being stranded and losing whatever baggage he had locked away in the luggage compartment."
501 U.S. at 435, 111 S.Ct. 2382. The ultimate holding by the court is a foresquare rejection of that per se argument.
The dissent focuses on the interval between the radioing of defendant's name and address to the police dispatcher, and the later response indicating no outstanding warrants, as amounting to a seizure because no reasonable person would feel free simply to walk away from the police while they were waiting to see if the person is wanted. But that position is at odds with the policy explained by the Court in Bostick:
"This Court ... is not empowered to suspend constitutional guarantees so that the Government may more effectively wage a `war on drugs.' If that war is to be fought, those who fight it must respect the rights of individuals, whether or not those individuals are suspected of having committed a crime. By the same token, this Court is not empowered to forbid law enforcement practices simply because it considers them distasteful. The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation. The cramped confines of a bus are one relevant factor that should be considered in evaluating whether a passenger's consent is voluntary. We cannot agree, however, with the Florida Supreme Court that this single factor will be dispositive in every case.
"We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus. The Florida Supreme Court erred in adopting a per se rule." [emphasis supplied, c.o.]
501 U.S. at 439-440, 111 S.Ct. 2382. If it does anything at all in this quagmire of encounters-versus-seizures, Bostick does make clear that per se rules are out. The issue becomes a question of fact, the resolution of which depends on all of the surrounding circumstances. Therefore the dissent's reliance on cases like United States v. Thompson, 712 F.2d 1356 (11th *720 Cir.1983), and Lightbourne v. State, 438 So.2d 380 (Fla.1983), is especially misplaced, for after Bostick they are of doubtful authority.
It is of course settled in search and seizure jurisprudence that:
"During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked."
Popple v. State, 626 So.2d 185, 186 (Fla. 1993); see also United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). It is also orthodox that "an officer does not need to have a founded suspicion to approach an individual to ask questions." Popple, 626 So.2d at 187. Moreover,
"a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity."
626 So.2d at 187-188. The inquiry for determining when an encounter with the police should properly be deemed a seizure is centered around whether a reasonable person would feel free "to disregard the police and go about his business." California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). As we have just shown, the central issue in these encounters turns on the totality of circumstances as resolved by the finder of fact, and not on per se rules to the effect that certain kinds of circumstances are thought too intimidating.
The dissent seeks to apply a per se rule that, when an officer uses available technology[1] to check or verify a citizen's voluntary statements during a consensual encounter, the encounter has necessarily changed into a seizure. Under Bostick, judges are not free to use the kind of per se rule advocated by the dissent. Instead trial judges must analyze each case based on the totality of the circumstances. We review whether the trial judge had competent evidence to reach the decision and whether the law was correctly applied. In this case we conclude that there was competent, substantial evidence and that there was no error in applying the law to that evidence.
AFFIRMED.
GUNTHER, J., concurs.
KLEIN, J., dissents with opinion.
KLEIN, J., dissenting.
I would have granted the motion to suppress in this case. In my opinion, no reasonable person would have believed that he was free to terminate the "consensual encounter" when the defendant allowed the officer to look in his backpack.
The encounter began, according to the officer, and in a light most favorable to the state, when the officer and his back up officer had just completed issuing a traffic citation involving someone not involved in this case. Their two vehicles were parked partly on the street and partly on the swale. The sixteen year old defendant and his friend were walking toward the area on the sidewalk, at 2:30 A.M., when the officer asked what they were doing and where they were headed. He then asked the defendant for identification. The defendant, who did not have identification, gave the officer his name and birth date, which the officer dispatched over his shoulder radio to determine if there were any warrants out for the defendant.
Before the information came back that there were no warrants, the officer asked *721 the defendant what was in the bag, and the defendant described various items. The defendant then offered the officer the bag so that the officer could look. The officer found tools which he believed were burglary tools and a loaded handgun. The trial court denied defendant's motion to suppress, and he appeals.
The state has at all times agreed that there was no founded suspicion to justify a stop by the officer, arguing only that this was a consensual encounter. Because the defendant gave his consent to search his backpack after the defendant knew that the officer had called in his name for a warrants' check, and prior to the officer receiving that information, I would hold that no reasonable person would have concluded that he or she was free to end the encounter and depart. I believe that any reasonable person would have thought that the officer was calling in the information for a purpose and that leaving would have made the officer's act of calling in the information futile. I see no difference between these facts and a situation in which the officer tells the person to wait while he radios in the name.
In Barna v. State, 636 So.2d 571 (Fla. 4th DCA 1994), defendant had been standing in parking lot behind a bar at night and the officers approached and told him that there had been drug activity and other crime in the parking lot and that they were going to "investigate a little further." They asked defendant for his identification and held it while running a teletype check. While the officer was holding the ID, the defendant agreed to be searched, and the officer found drug paraphernalia.
The trial court denied the motion to suppress on the ground that, even though there was no lawful investigatory stop, the defendant consented to the search during a consensual encounter. We reversed, concluding that no reasonable person would have believed he was free to leave while the officer was holding his ID. See U.S. v. Thompson, 712 F.2d 1356 (11th Cir.1983) (an officer's retention of a citizen's identification is sufficient to convert an encounter into a stop); Lightbourne v. State, 438 So.2d 380 (Fla.1983) (prior to defendant voluntarily relinquishing his driver's license to the officer, defendant would have been free to leave when an officer approached him in his parked vehicle and asked him questions). I recognize that holding a defendant's ID is more coercive than what happened in the present case; however, I have not been able to find any cases which are more factually similar to the present case.
When precedent requires me to go along with the fiction[2] that the defendant would have felt free to leave in a consensual encounter, I do so. I am reluctant to extend that fiction, though, because no one really feels free to leave. Everyone is intimidated by the officer's authority.
Finding no binding precedent which would compel a decision to the contrary, I would hold that where the defendant knows the officer has called in his name to determine if there are any outstanding warrants, the defendant would not have felt free to leave prior to the information coming back to the officer. The "words and actions" of the officer were sufficient, during that brief period, to convert this encounter into a stop. California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
NOTES
[1] Nothing in the dissent suggests that its conclusion is based on the nature of the technology used during the interval between inquiry and response. Today it was a shoulder radio; tomorrow it may be a laptop computer linked to the world of information by the internet.
[2] "It is nothing more than fiction to say that all of these suspects have consented to the confrontation." Wayne R. LaFave, Search and SeizureA Treatise on the Fourth Amendment § 9.3(a), at 95-96 (3d ed.1996).