FARMER, J.
In affirming this conviction, we write only to respond to the dissenting opinion.
As police were investigating a traffic matter in the early morning hours, with their police cars parked partially on the swale, a 16-year old boy approached the scene on the sidewalk with a friend. One of the police asked the boy for identification and to explain what he was doing out at that hour. Disclaiming any identification, he did give the officer his name. The officer immediately radioed it to check for warrants. After the officer received a response he inquired as to what the boy was carrying in his backpack, and the boy offered it to the officer to look inside. There the officer found what he thought were burglary tools, along with a loaded firearm.
The boy was arrested for possession of contraband. In time, a trial judge considered his motion to suppress. After hearing testimony from the participants, the judge explained his findings thus:
“I find that this officer stated to this young man: ‘how are you doing?;’ ‘where are you headed?;’ ‘what are you doing?;’ that at no time was his path blocked by the officer. The officer was standing 6 to 8 feet away. The only time at which these officers encircled this young man is after the gun was found in his bag. Until that time, they kept an appropriate distance from him, so he was not being detained by them physically. I find that he initiated the handing over of the backpack after he was asked what was in it, and before looking in it the officer confirmed: ‘are you sure that I can look in the bag?’ ”
The court denied the motion to suppress. Following the conviction defendant appeals that denial. We necessarily affirm, for the record contains ample evidence to support his determination.
The basis for the dissent is that, as a matter of law, no reasonable person would feel free to end this kind of consensual encounter during the period after the officer radioed the name for a computer check and while the parties awaited a response. The dissent then likens this circumstance to relinquishing a drivers license to an officer which, it is argued, constrains the citizen from feeling free to leave, citing United States v. Thompson, 712 F.2d 1356 (11th Cir.1983), and Lightbourne v. State, 438 So.2d 380 (Fla.1983). While recognizing that holding a drivers license “is more coercive than what happened in the present case,” the dissent candidly admits the absence of cases identical to this in which the evidence was suppressed. We are not surprised that the dissent has found no cases to support a holding that the present facts are so coercive that they overcome the freedom to end the encounter. Simply stated, the law is to the contrary.
In Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), a passenger on a Greyhound bus was ap *719 proached by officers during a stopover in Fort Lauderdale en route to Atlanta. The officers, who were identifiable by badge, insignia and visible weapon, walked down the aisle of the bus and — without any ar-ticulable reason for doing so — stopped at defendant’s seat. They asked to see his ticket and some identification. Explaining that they were narcotics officers, they asked for permission to search his luggage. After he consented they found drugs and arrested him. In reviewing the Supreme Court of Florida’s holding that the officers had seized the defendant because no reasonable person would have felt free to terminate the encounter, the United States Supreme Court stated the argument in favor of suppression thus:
“Bostick insists that this case is different because it took place in the cramped confines of a bus. A police encounter is much more intimidating in this setting, he argues, because police tower over a seated passenger and there is little room to move around. Bostick claims to find support in language from Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), and other cases, indicating that a seizure occurs when a reasonable person would believe that he or she is not ‘free to leave.’ Bostick maintains that a reasonable bus passenger would not have felt free to leave under the circumstances of this case because there is nowhere to go on a bus. Also, the bus was about to depart. Had Bostick disembarked, he would have risked being stranded and losing whatever baggage he had locked away in the luggage compartment.”
501 U.S. at 435, 111 S.Ct. 2382. The ultimate holding by the court is a foresquare rejection of that per se argument.
The dissent focuses on the interval between the radioing of defendant’s name and address to the police dispatcher, and the later response indicating no outstanding warrants, as amounting to a seizure because no reasonable person would feel free simply to walk away from the police while they were waiting to see if the person is wanted. But that position is at odds with the policy explained by the Court in Bostick:
“This Court ... is not empowered to suspend constitutional guarantees so that the Government may more effectively wage a “war on drugs.’ If that war is to be fought, those who fight it must respect the rights of individuals, whether or not those individuals are suspected of having committed a crime. By the same token, this Court is not empowered to forbid law enforcement practices simply because it considers them distasteful. The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation. The cramped confines of a bus are one relevant factor that should be considered in evaluating whether a passenger’s consent is voluntary. We cannot agree, however, with the Florida Supreme Court that this single factor will be dispositive in every case.
“We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers’ requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus. The Florida Supreme Court erred in adopting a per se rule.” [emphasis supplied, c.o.]
501 U.S. at 439-440, 111 S.Ct. 2382. If it does anything at all in this quagmire of encounters-versus-seizures, Bostick does make clear that per se rules are out. The issue becomes a question of fact, the resolution of which depends on all of the surrounding circumstances. Therefore the dissent’s reliance on cases like United States v. Thompson, 712 F.2d 1356 (11th *720 Cir.1983), and Lightbourne v. State, 438 So.2d 380 (Fla.1983), is especially misplaced, for after Bostick they are of doubtful authority.
It is of course settled in search and seizure jurisprudence that:
“During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.”
Popple v. State, 626 So.2d 185, 186 (Fla.1993); see also United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). It is also orthodox that “an officer does not need to have a founded suspicion to approach an individual to ask questions.” Popple, 626 So.2d at 187. Moreover,
“a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person’s freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity.”
626 So.2d at 187-188. The inquiry for determining when an encounter with the police should properly be deemed a seizure is centered around whether a reasonable person would feel free “to disregard the police and go about his business.” California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). As we have just shown, the central issue in these encounters turns on the totality of circumstances as resolved by the finder of fact, and not on per se rules to the effect that certain kinds of circumstances are thought too intimidating.
The dissent seeks to apply a per se rule that, when an officer uses available technology [1] to check or verify a citizen’s voluntary statements during a consensual encounter, the encounter has necessarily changed into a seizure. Under Bostick, judges are not free to use the kind of per se rule advocated by the dissent. Instead trial judges must analyze each case based on the totality of the circumstances. We review whether the trial judge had competent evidence to reach the decision and whether the law was correctly applied. In this case we conclude that there was competent, substantial evidence and that there was no error in applying the law to that evidence.
AFFIRMED.
GUNTHER, J., concurs.
KLEIN, J., dissents with opinion.

. Nothing in the dissent suggests that its conclusion is based on the nature of the technology used during the interval between inquiry and response. Today it was a shoulder radio; tomorrow it may be a laptop computer linked to the world of information by the internet.