POLEN, J.
This appeal arises from a non-final order suppressing physical evidence. We reverse the order on the basis that the police officers’ initial contact with R.H. was a consensual citizen encounter, not a stop, and R.H. consented to the subsequent search.
R.H. was charged by Delinquency Petition with possession of cocaine, in violation of sections 893.03(2)(a)(4) and 893.13(6)(a), Florida Statutes, and with unlawful use of a false name or identity, in violation of *691 section 901.36(1), Florida Statutes. R.H. moved to suppress physical evidence, arguing the encounter was not consensual, no reasonable suspicion existed for the stop, and he was “seized” for Fourth Amendment purposes. After an evidentiary hearing, the trial court granted the motion to suppress.
Deputy Sheriff Officer Leslie Washecka, the only witness to testify at the hearing, testified as follows:
At approximately 1:00 a.m. on July 25, 2003, Deputy Washecka and her trainer, Deputy Michael Macon, were driving by the parking lot of a closed business area in an area “notorious for narcotics as well as some other crimes.” They observed R.H. lean for a few seconds into a red car, the only car in the lot at the time. The red car then left. The officers turned around, parked in the parking lot, exited their marked police car, and approached R.H. in police uniform.
The officers asked, “Hey, how you doing? What’s your name? ' Your date of birth?” He gave a false name and said that his birthday was January 25th, 1985. Washecka asked if he had anything illegal on him, any drugs, weapons or guns. He answered no. She then asked if they could search him, to which he acquiesced. Washecka testified that she did not put her hands on R.H. before he agreed to be searched. R.H. never indicated that he wanted to leave and “[h]e got a little nervous.” Deputy Macon then conducted the search, finding cocaine in R.H.’s pocket.
Washecka testified that R.H. looked young, between the ages of 16 and 18. She also stated that they stopped R.H. “for drugs and other problems,” which she elaborated to mean “[o]ther crimes.” Finally, Washecka testified that “[a]t no point did we like surround him or. tell him he was detained or anything like that. We were just talking to him.” . .
The trial court granted R.H.’s motion to suppress, finding that the contact between the police officér and the R.H. was not a consensual citizen encounter, but rather a stop, and 'finding that the officer did not have reasonable suspicion to justify the stop. The state appealed the trial court’s ruling'.
A trial court’s ruling on a motion to suppress is a mixed question of fact and law. Shingles v. State, 872 So.2d 434, 437 (Fla. 4th DCA 2004). While legal conclusions should be reviewed de novo, “a reviewing court should take care both to review findings of historical fact only for' clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.” Ornelas v. U.S., 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
We hold that reasonable suspicion was not required in this situation because it was a consensual citizen encounter that did not escalate into an investigatory stop. A consensual encounter does not require the police to have a reasonable suspicion of any improper conduct before initiating conversation. Chapman v. State, 780 So.2d 1036, 1037 (Fla. 4th DCA 2001). The Florida Supreme Court described the thrée levels of police-citizen encounters in Popple v. State, 626 So.2d 185, 186 (Fla.1993):
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked. ■
*692 The second level 'of police-citizen encounters involves an investigatory stop as enunciated in, Terry v. Ohio .... At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
[T]he third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed.
(Internal citations omitted.)
“It is well established that an officer does not need to have a founded suspicion to approach an individual to ask questions.” Id. at 187. However, even an’ initially consensual encounter can escalate into a stop. See, e.g., Sholtz v. State, 649 So.2d 283 (Fla. 2d DCA 1995) (holding officer’s stop and frisk of defendant, after noticing during consensual encounter that defendant had bulge in his pocket, was not valid, because facts did not establish well-founded suspicion that defendant was involved in criminal activity).
This court has held that “[t]he inquiry for determining when an encounter with the police should properly be deemed a seizure is centered around whether a reasonable person would feel free ‘to disregard the police and go about his business.’ ” O.A. v. State, 754 So.2d 717, 720 (Fla. 4th DCA 1998) (citation omitted). This depends upon “the totality of circumstances.” Id. The instant case is nearly factually identical to O.A. v. State. In that case, the following transpired:
As police were investigating a traffic matter in the early morning hours, with their police cars parked partially on the swale, a 16-year old boy approached the scene on the sidewalk with a friend. One of the police asked the boy for identification and to explain what he was doing out at that hour. Disclaiming any identification, he did give the officer his name. The officer immediately radioed it to check for warrants. After the offi- , cer received a resppnse he inquired as to what the boy was carrying in his backpack, and the boy offered it to the officer to look inside. There the officer 'found what he thought were burglary tools, along with a loaded firearm.
The boy was arrested for possession of contraband. In. time, a trial judge considered his motion to suppress. After hearing testimony from the participants, the judge explained his findings thus:
“I find that this officer stated to this young man: ‘how are you doing?;’ ‘where are you headed?;’ ‘what are you doing?;’ that at no time was his path blocked by the officer. The officer was standing 6 to 8 feet away. The only time at which these officers encircled this young man is after the gun was found in his bag. Until that time, they kept an appropriate distance from him, so he was not being detained by them physically. I find that he initiated the handing over of the backpack after he was asked what was in it, and before looking in it the officer confirmed: ‘are you sure that I can look in the bag?’ ”
Based on those facts, this court affirmed the trial court order denying O.A.'s motion to suppress evidence because we concluded that the defendant consented to the search during a consensual encounter. The facts in this case are similar to those in State v. Collins, 661 So.2d 962, 963 (Fla. 5th DCA 1995). In that case:
*693 Two Orlando Police Department uniformed bicycle officers observed Collins sitting in a black Porsche at 9:30 p.m. The vehicle was lawfully parked in a public parking lot. The officers noticed Collins because his car dome light was on and he appeared to fidget with his hands. As the officers approached the vehicle, Collins got out of the car and attempted to lock it. He walked toward the officers when they asked Collins if they could talk with him. Collins agreed and walked to the rear of the car with one of the officers. Collins and the officer engaged in casual conversation, and the officer asked Collins if he had any guns, knives, or drugs on his person. Collins said he had a pocketknife and gave it to the officer to hold for him. The officers asked Collins if they could search his person and his car. Collins consented. One officer found $338 and a baggie with a small amount of marijuana in Collins’ front pocket. The other officer found 112 grams of marijuana in the black Porsche. The entire contact between the officers and Collins lasted less than two minutes.
Based on those facts, the fifth district reversed the trial court order granting Collins’ motion to suppress because it concluded that the consensual contact between the officers and Collins never evolved into an investigatory stop. Id. at 964. The fifth district contrasted Collins from cases in which there was a demonstrable point at which the consensual citizen encounter evolved into an investigatory stop, including Taylor v. State, 658 So.2d 173 (Fla. 5th DCA 1995) (officer ordered defendant to turn off his ear and hand over his license); Stephens v. State, 656 So.2d 531 (Fla. 2d DCA 1995) (officer grabbed defendant’s hand); Harrison v. State, 627 So.2d 583 (Fla. 5th DCA 1993) (police ordered defendant to remove hands from his pockets); State v. Brown, 616 So.2d 124 (Fla. 2d DCA 1993) (officer ordered defendant to place his hands on police cruiser); Jackson v. State, 579 So.2d 871 (Fla. 5th DCA 1991) (police directed defendant to exit his car).
In the present case, the encounter was purely consensual because the officers did not “hinder or restrict the person’s freedom to leave or freedom to refuse to answer inquiries” Errickson v. State, 855 So.2d 700 (Fla. 4th DCA 2003). The officers were standing next to one another and not surrounding R.H., R.H. acquiesced to their search of his person, and R.H. never indicated that he wished to leave.
Based on “the totality of circumstances,” we hold that in this case, as in Collins, the consensual contact between the officers and R.H. never evolved into an investigatory stop. See O.A. v. State, 754 So.2d at 720. As the United States Supreme Court stated in Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (U.S. 1991), “no seizure occurs when police ask questions of an individual, ask to examine the individual’s identification, and request consent to search his or her luggage — so long as the officers do not convey a message that compliance with their requests is required.” Therefore, we reverse the trial court order granting R.H.’s motion to suppress and remand this case to the trial court.
WARNER, J., concurs.
HAZOURI, J., concurs specially with opinion.