927 So.2d 173 (2006)
Ricardo DENNIS, a/k/a Ricardo DaVinci Dennis, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-3085.
District Court of Appeal of Florida, Second District.
April 28, 2006.
*174 James Marion Moorman, Public Defender, and Bruce P. Taylor, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Ricardo Dennis appeals his judgment for possession of cocaine with intent to sell or deliver and possession of cannabis. Mr. Dennis pleaded no contest after reserving the right to appeal the denial of his dispositive motion to suppress the contraband. We conclude the contraband was seized during an unlawful detention, and therefore the trial court erred in denying Mr. Dennis's motion to suppress. Accordingly, we reverse.
On February 15, 2005, at approximately 11:30 a.m., two deputies were attempting to execute arrest warrants in a region of Hillsborough County north of Fowler Avenue. Both deputies testified that they were employed as warrants officers. They were traveling together in a single, unmarked police car. The officers were in plain clothes but were wearing their badges. One of the arrest warrants they were trying to execute was for a nineteen-year-old, six-foot-tall, African-American male named "Jeremiah Williams." One of the officers testified that they left the immediate area where they were looking for Jeremiah Williams, rounded the block into the vicinity of 131st Avenue and 22nd Street, and "continued to look for other people" for whom they had warrants.
While in the vicinity of 131st Avenue and 22nd Street, the officers saw Mr. Dennis riding his bicycle. Mr. Dennis, also an African-American male, was twenty-nine years old and stood roughly five feet six inches tall. Based on the dreadlocks in Mr. Dennis's hair and his "protruding forehead," the officers believed Mr. Dennis "pretty much matched" the description they had of Jeremiah Williams.
The officers proceeded to drive alongside Mr. Dennis in their unmarked car, calling out the name "Jeremiah." In response to the officers' cries, Mr. Dennis slowed down his bike and looked in the officers' direction. The officers continued to follow alongside Mr. Dennis in their vehicle, asking if he was "Jeremiah," and asking him to come closer to their vehicle so they could get a better look at him. Mr. Dennis responded that he was not "Jeremiah" and continued on his way.
When Mr. Dennis got to the corner of 131st Avenue and 20th Street, the officers stopped their vehicle, simultaneously exited, and approached him on foot. They displayed their badges and identified themselves as police officers. Mr. Dennis stopped and got off of his bike. The officers continued to ask Mr. Dennis if he was "Jeremiah" and demanded he produce identification. They also asked him if he was carrying any drugs or weapons.
As Mr. Dennis reached into his pocket, allegedly in a manner that concerned the officers, one of the officers tackled him to the ground. Mr. Dennis's hand was forcibly removed from his pocket. Mr. Dennis had a piece of cocaine in his hand. Cannabis was found in his pocket after a search incident to arrest.
Mr. Dennis moved to suppress the cocaine and the cannabis on the theory that he had been unlawfully stopped. The trial court denied the motion, finding that Mr. Dennis bears a "resemblance" to Jeremiah Williams. He pleaded to these convictions, reserving his right to appeal the denial of his dispositive motion to suppress.[1]
*175 In analyzing this case, it is helpful to appreciate the role played by the arrest warrant. This is not a case of mistaken identity in which Mr. Dennis claims that he was arrested based on a warrant issued for Jeremiah Williams. If it were, the case would be controlled by Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), in which the Supreme Court articulated the standard for evaluating an arrest based on mistaken identity. Instead, the officers in this case did not immediately arrest Mr. Dennis. Both their behavior and their testimony suggest that they were not convinced of his identity when they stopped him and displayed their badges. The State quite properly does not argue that this case involves a consensual encounter. Thus, the issue in this case is comparable to the issue in most cases involving a stop without a warrant  whether the officers had a well-founded suspicion to conduct an investigatory stop of Mr. Dennis.
When conducting an investigatory stop, an officer may reasonably and temporarily detain a citizen only if the officer has a well-founded, articulable suspicion that the person has committed, is committing, or is about to commit a crime. See Travers v. State, 739 So.2d 1262, 1263 (Fla. 2d DCA 1999); State v. R.H., 900 So.2d 689, 692 (Fla. 4th DCA 2005). In the case of an officer executing arrest warrants, the officer must essentially have a reasonable suspicion that the detainee is the person named in the warrant. Mere suspicion is insufficient to support an investigatory stop. R.H., 900 So.2d at 692. "The existence of an arrest warrant is of no moment on the question whether a particular person police officers come across is in fact the subject of the warrant. The warrant supplies the officers with probable cause to arrest the person it names and describes, not a license to duck the reasonable suspicion requirement and stop someone they only have a subjective hunch is that person." United States v. Hudson, 405 F.3d 425, 439 n. 9 (6th Cir. 2005). We conclude that the officers did not have a reasonable suspicion to justify an investigatory stop of Mr. Dennis.
The officers presented no evidence beyond Mr. Dennis's race, gender, hairstyle, and forehead sufficient for them to have a well-founded suspicion that Mr. Dennis was actually Jeremiah Williams. There was no testimony from the officers that Jeremiah Williams was known to frequent the location of the stop or that he was known to ride a bicycle. They did not have any independent evidence that Jeremiah Williams was in the area when Mr. Dennis was encountered on that day. On the contrary, the testimony given by one of the officers that they had ceased their search for Jeremiah Williams and had turned their attention to other individuals located in a different area suggests even more strongly that the similarities they saw in Mr. Dennis raised a mere "hunch" inadequate to justify an investigatory stop.
Even though we defer to the trial court's factual finding that the two men bear a "resemblance" to each other, we disagree with the trial court's legal conclusion that these very basic similarities were sufficient to support an investigatory stop on an arrest warrant. See Cillo v. State, 849 So.2d 353 (Fla. 2d DCA 2003) (an appellate court defers to a trial court's factual findings but reviews the application of the law to those factual findings de novo). The booking photographs for both men are available to this court. The booking photograph and information used by the officers *176 to ascertain Jeremiah Williams' identity was taken less than four months prior to this incident and, thus, provided recent information. The basic similarities that the officers observed in these two men were characteristics that would have been shared by a significant number of men in that neighborhood. Jeremiah Williams' forehead, however verbally described, is not particularly distinctive. Mr. Dennis's hair is substantially longer than Jeremiah Williams' hair. Moreover, there were significant differences in appearance that should have been noticed and considered by officers trained to execute warrants. A ten-year age difference between the two men existed. The officers were looking for a man in his late teenage years and stopped a man nearly thirty years old. While we realize that descriptions based on height and weight can often be general approximations, these were not patrol officers deciding to stop a man based on a BOLO for a recent crime. Here, the warrants officers were relying on recent booking information as to Jeremiah Williams' height and weight and should have realized no later than when Mr. Dennis dismounted his bicycle that he was six inches shorter than the recent height listed for Jeremiah Williams.
Because we conclude that there was no reasonable suspicion to support an investigatory stop of Mr. Dennis, the trial court should have granted the motion to suppress. We reverse the judgment and remand with instructions to discharge Mr. Dennis of this charge.
Reversed and remanded.
SALCINES and KELLY, JJ., Concur.
NOTES
[1] We note that Mr. Dennis was sentenced on two other offenses that were charged in separate informations. Those informations involved offenses on other dates. The convictions and sentences in those cases are not affected by this opinion.