LEVINE, J.
The issue presented in this case is whether a law enforcement officer’s use of appellee’s name and date of birth for a warrants check turns a consensual encounter into an encounter requiring reasonable suspicion. We find that the mere act of running appellee’s name for an active warrants check does not require reasonable suspicion. Therefore, we find that the trial court erred, reverse the granting of the motion to suppress, and remand for findings of fact.
On March 14, 2009, two law enforcement officers were on patrol in response to complaints of narcotics and other criminal conduct in the Fort Lauderdale area at 1:00 a.m. While the officers were conducting a check on a twenty-four hour market, the officers observed appellee standing on the side of the business. No one else was around the area at that time. The officer parked his patrol car across the street and approached appellee on foot. The officer did not activate the overhead lights of his patrol car or draw his weapon. At the evidentiary hearing on the motion to suppress, the officer testified that appellee was free to go wherever he wanted.
The officer asked appellee for his name and date of birth. Appellee responded by giving his name and date of birth. At that point, appellee’s information was run over a teletype to check for active warrants. After discovering that there was an active warrant, the officers placed appellee under arrest and read him his Miranda rights.
After appellee was placed under arrest for the active warrant, the officer patted appellee down and found approximately fifteen grams of marijuana in thirteen baggies in his left front pocket. The officers placed him in the back of their vehicle and Mirandized him again. On the way to jail, appellee made a statement to the officer, which the officer characterized as a “spontaneous utterance,” that the “weed wasn’t his,” that he “was carrying” the marijuana for someone else, and that “he can’t go down” for the marijuana.
Appellee’s testimony at the suppression hearing largely contradicted the officers’ testimony. Appellee claimed that he had entered his car and that the officers blocked his car and placed a spotlight on him. Appellee did not feel free to go. The officers asked for his driver’s license, but he did not have a license, so he gave them his identification card. They asked him to step out of his car and then searched him.
Despite this conflict in the evidence, the trial court found the testimony of both the officer and appellee to be “believable.” The trial court further found when both officers approached appellee,
I think that up until that point it was consensual encounter and everything was fine. The problem is that up until that point there was no reasonable suspicion, and that should have been the end of it. But instead, your client was detained, they checked him for warrants, and a warrant was found.
The trial court granted the motion to suppress, finding that the officers needed reasonable suspicion in order to run a warrants check on appellee. The trial court concluded, “The officers had to go and do a warrant check on him. So accordingly the motion to suppress will be granted.” This appeal ensues.
The appellate court must interpret the evidence and reasonable inferences in a manner most favorable to sustaining the trial court’s ruling. San Martin v. State, 717 So.2d 462, 469 (Fla.1998). A presump *353 tion of correctness is granted to a trial court’s determinations of facts, and the appellate court independently reviews mixed questions of law and fact regarding constitutional issues. Caldwell v. State, 41 So.3d 188, 194 (Fla.2010).
There are three levels of police-citizen encounters. Popple v. State, 626 So.2d 185, 186 (Fla.1993). The first level is consensual encounters, where there is minimal police contact during which the citizen is free to leave at any point. Id. The second level consists of citizens temporarily detained based upon a reasonable, well-founded suspicion that the person has committed, is committing, or is about to commit a crime. Id. The third level consists of arrests based upon probable cause. Id.
In the present case, the officer approaching appellee, and asking questions regarding his name and date of birth, would constitute the first level of police-citizen encounter. See O.A. v. State, 754 So.2d 717 (Fla. 4th DCA 1998); State v. Goodwin, 36 So.3d 925, 926 (Fla. 4th DCA 2010) (“[t]he mere questioning of an individual, including a police request for identification, does not amount to a Fourth Amendment detention”) (citation omitted). Further, a warrants check does not per se transform the encounter into a seizure. See O.A., 754 So.2d at 718-20; State v. Woodard, 681 So.2d 733, 735 (Fla. 2d DCA 1996).
The trial court erred in determining that Golphin v. State, 945 So.2d 1174 (Fla.2006), mandated the suppression in this case. In Golphin, officers approached a group of individuals, including Golphin. Golphin never attempted to leave as other individuals walked away. One officer requested his identification, which Golphin voluntarily provided. While one officer was making a computer check on Golphin to determine if there were any open warrants, Golphin volunteered that he may have an open warrant.
The trial court in this case determined: [W]hen I look at the facts in Golphin, and I look at the facts in this case, you see clearly distinguishable in that the consensual encounter continued until the time in Golphin they checked and found the warrant. In Golphin you have Gol-phin admitting there was a warrant. But this is not what you have here. The officers had to go and do a warrant check on him.
However, the Golphin decision was not guided by the fact that Golphin admitted there was a warrant. Rather, the Florida Supreme Court concluded that “Fourth Amendment constitutional safeguards were not implicated when Officer Doemer utilized the identification that Golphin voluntarily provided to check for outstanding warrants.” Id. at 1190. The court reiterated that a “noncompulsory request for an individual’s identification has been unlikely to implicate the Fourth Amendment in isolation.” Id. at 1185. The court further found that since Golphin was not the driver of the vehicle, “theoretically, retention of Golphin’s identification would not have constrained his ability to either request the return of the identification or simply end the encounter by walking into the apartment in which he was staying.” Id. at 1188.
In conclusion, the trial court misinterpreted Golphin and erred in finding that the warrants check constituted an encounter requiring reasonable suspicion. As such, we reverse and remand for the trial court to make factual findings, after an additional hearing if necessary, regarding whether the encounter was consensual or an illegal stop, whether the officers conducted a search of appellee before or after the discovery of the outstanding war *354 rant, and the applicability, if any, of State v. Frierson, 926 So.2d 1139, 1143 (Fla.2006) (identifying three factors a court should consider in determining whether evidence obtained after an illegal stop should be excluded: “(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagraney of the official misconduct”) (citation omitted).

Reversed and remanded with instilla-tions.

TAYLOR and HAZOURI, JJ., concur.