DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.F.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D20-390

[October 28, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stacy Ross, Judge; L.T. Case No. 19-002405DLA.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

R.F. appeals the denial of his motion to suppress physical evidence. Because we conclude appellant was not seized for Fourth Amendment purposes where the deputy used a spotlight and a flashlight to illuminate his approach of appellant, we affirm the denial of the motion to suppress.

### *Statement of Facts*

Appellant was charged by petition for delinquency with carrying a concealed firearm. He moved to suppress the physical evidence against him, arguing that the firearm was seized during an illegal stop.

At the suppression hearing, a deputy testified that around 2:00 a.m. on July 20, 2019, he was conducting a routine patrol of his assigned area in Pembroke Park. The area is known as a high-crime area for vehicle burglaries. The deputy testified that approximately thirty-one vehicle burglaries were reported in the area in the two months prior to his patrol that night.

While on patrol, the deputy observed a white Mercedes Benz parked adjacent to an apartment building. The vehicle caught the deputy's attention because, although it was backed into a parking space, it abutted "halfway into the access road" to the apartment complex. The deputy acknowledged that the vehicle was not parked in violation of any traffic law. The vehicle was turned on and running. He observed appellant seated in the driver's seat of the vehicle and another male in the passenger seat.

The deputy parked his marked patrol car about two spaces west of the Mercedes. The deputy's car did not block in the Mercedes or otherwise prevent it from leaving. The deputy did not turn on his vehicle's emergency lights or sirens but activated the scene light for illumination of the area.

The deputy, who was wearing his uniform, approached the driver's side of the Mercedes with a flashlight in his hand and shined the light into the vehicle's driver-side door window. Appellant rolled down the car window at the deputy's approach. The deputy noticed a strong smell of burnt marijuana coming from within the vehicle. He also observed appellant's companion drop his hand down beneath his seat and heard what sounded like a heavy object hitting the floor of the Mercedes. This aroused his suspicion that there were weapons in the vehicle.

The deputy asked appellant if he knew anyone at the apartment complex. Appellant responded that he knew somebody. At this point, the deputy told appellant that he smelled marijuana. He also observed a green, leafy substance on the center console that appeared to be marijuana. He then asked for identification from both appellant and his companion. Appellant did not have identification with him so he gave the deputy his name instead. The deputy ran a search on appellant's name and confirmed appellant's identity and that appellant was in legal possession of the vehicle. The deputy then searched appellant and his companion, as well as the Mercedes. He found two firearms and a bag of marijuana. One firearm was located under the driver's seat. The other was located under passenger seat.

At the conclusion of the hearing, the trial court denied the motion to suppress. The court found that the consensual encounter became an investigatory stop only *after* appellant rolled down his window and the deputy smelled marijuana and saw it in plain view. The court found the deputy's testimony to be credible and that the deputy turned on the overhead lights and used the flashlight for safety.

2

Appellant entered a no contest plea and reserved the right to appeal. The trial court withheld adjudication and sentenced him to fifteen days secure detention and probation.

On appeal, appellant argues that the trial court erred in denying his motion to suppress. Appellant claims that the deputy illegally stopped him—without any reasonable suspicion of criminal activity—when the deputy activated a scene light and shined a flashlight through appellant's vehicle window. The key issue in this case then is whether the deputy's approach of the parked vehicle amounted to an investigatory stop. We hold that it does not.

### Standard of Review

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Terry v. State*, 668 So. 2d 954, 958 (Fla. 1996). In reviewing a motion to suppress, an appellate court presumes the trial court's findings of fact are correct and reverses only those findings not supported by competent, substantial evidence. *Black v. State*, 59 So. 3d 340, 344 (Fla. 4th DCA 2011). However, an appellate court applies a de novo standard of review to the mixed questions of law and fact that ultimately determine constitutional issues. *Schoenwetter v. State*, 931 So. 2d 857, 866 (Fla. 2006).

### Consensual Encounter or Investigatory Stop

The Florida Supreme Court has identified three levels of police-citizen encounters: 1) a consensual encounter involving minimal contact during which the citizen is free to leave; 2) an investigatory stop or detention which requires a well-founded, articulable suspicion of criminal activity; and 3) an arrest supported by probable cause that a crime has been committed, or is being committed. *Taylor v. State*, 855 So. 2d 1, 14–15 (Fla. 2003).

"During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked." *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993). Police are not required to have a reasonable suspicion of improper conduct to initiate a consensual encounter. *Taylor*, 855 So. 2d at 15 (citation omitted). Questioning an individual, including a police request

3

for identification, does not transform a consensual encounter into an investigatory stop. *State v. Goodwin,* 36 So. 3d 925, 926 (Fla. 4th DCA 2010).

In distinguishing between a consensual encounter and an investigatory stop, the central inquiry is whether, under the totality of the circumstances, a reasonable person would feel free to disregard the police and go about his business. *State v. R.H.,* 900 So. 2d 689, 692 (Fla. 4th DCA 2005). Circumstances that might indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall,* 446 U.S. 544, 554–55 (1980).

Courts consider the use of a police spotlight or flashlight as a factor "in evaluating whether a person would reasonably believe he was free to leave." *Leroy v. State,* 982 So. 2d 1250, 1252 (Fla. 1st DCA 2008). However, "a uniformed officer's use of a spotlight or a flashlight, *without more,* does not transform a consensual encounter into an investigatory stop." *Goodwin,* 36 So. 3d at 927 (emphasis in original).

In *Goodwin,* this court held that a police-citizen interaction was a consensual encounter where the uniformed officer turned on her spotlight to see inside the defendant's vehicle and approached the defendant with a flashlight in her hand. *Id.* This court noted that the officer did not block the defendant's vehicle, turn on emergency lights, approach the defendant with a hand on her weapon, or direct the defendant to take any physical action other than producing his identification. *Id.* We distinguished the case from our previous holding in *Williams v. State,* 874 So. 2d 45, 47 (Fla. 4th DCA 2004), where we concluded that "a reasonable person would not feel free to end [an] encounter and to leave under circumstances where an officer shines a flashlight in his or her face, approaches with his hand on his weapon, and directs him or her to stand." *Id.* (quoting *Williams*). We thus emphasized that "the officer's mere use of her spotlight and flashlight did not transform this consensual encounter into an investigatory stop." *Id.*

By contrast, in cases where an officer's use of a flashlight or a spotlight contributed to a determination that a seizure occurred, there were additional factors that transformed the encounter into a seizure. *See Smith v. State,* 87 So. 3d 84, 88 (Fla. 4th DCA 2012) (holding that the defendant was detained where the officer parked "catty corner" to the defendant's vehicle, activated his emergency lights, and used his spotlight

to illuminate the interior of the defendant's vehicle); *Leroy*, 982 So. 2d at 1252 (holding that the defendant was seized where an officer emerged from "the shadows," "lit up" the defendant's vehicle, approached the defendant in a confined space between two vehicles, and later testified that the defendant was "detained for a trespass investigation").

Here, the trial court correctly found that the deputy's use of the spotlight and flashlight did not amount to an investigatory stop. Similar to *Goodwin,* the deputy's use of the spotlight and the flashlight were not coupled with any other factors that would transform the encounter into an investigatory detention. The deputy parked his vehicle one or two spaces away from appellant's Mercedes so that appellant was not blocked in and was free to leave. He did not turn on his emergency lights. Unlike the officer in *Williams,* the deputy in this case did not approach with his hand on his weapon or direct appellant to take any physical action until after appellant opened his vehicle window.

The encounter became an investigatory stop when the deputy smelled the marijuana after appellant rolled down his window. At that point, the deputy had reasonable suspicion that a crime was being committed. Accordingly, the deputy's use of his spotlight and flashlight did not transform the consensual encounter into an investigatory stop requiring reasonable suspicion. Therefore, viewing the facts in the light most favorable to sustaining the trial court's ruling, the trial court did not err in denying appellant's motion to suppress. We affirm.

*Affirmed.*

MAY and KUNTZ, JJ., concur.

*         *         *

**Not final until disposition of timely filed motion for rehearing.**